## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                Respondent,<br><br>        v.<br><br>BRANDON RASHAD SULLIVAN,<br><br>                Appellant. | DIVISION ONE<br><br>No. 81254-8-I<br><br>PUBLISHED OPINION |

DWYER, J. — Brandon Sullivan appeals from his convictions of robbery in the first degree and unlawful possession of a firearm in the first degree. Sullivan asserts that the trial court erred by admitting certain evidence in violation of ER 404(b) and ER 403. Additionally, Sullivan contends that sufficient evidence does not support a finding that (1) he or an accomplice was armed with a deadly weapon during the robbery, or (2) he was an accomplice to the robbery. Further, in his statement of additional grounds, Sullivan asserts that the trial court violated the appearance of fairness doctrine. Because Sullivan fails to establish an entitlement to relief on any of these claims, we affirm his convictions.

Sullivan also contends that he is entitled to be resentenced because the superior court included two convictions of unlawful possession of a controlled substance in his offender score. Because a recent decision of our Supreme Court indicates that Sullivan is entitled to be resentenced, we remand the cause to the superior court for such action.

I

On August 18, 2017, at approximately 12:45 a.m., King County Sheriff's deputies responded to multiple 911 reports indicating that gun shots had been fired at Skyway Park Bowl. After the deputies arrived at the bowling alley, they found the body of Dennis Robinson in an outdoor smoking area. The smoking area, located at the exterior of the building, was accessible by way of the bar lounge inside the bowling alley. Robinson had been shot in the head by a 9 mm bullet.

Deputies found a 9 mm pistol under Robinson's body and a 9 mm magazine cartridge inside a pocket of his sweatpants. The pistol did not have a magazine cartridge inserted inside. Moreover, a single round was located in the chamber of the handgun.

Another individual, Kenneth Gantz, was also found lying in the smoking area. Gantz had also been shot. Medics arrived at Skyway Park Bowl and transported Gantz to Harborview Medical Center. He did not survive. Gantz had been shot by a .40 caliber bullet. A forensic scientist testified that the bullet appeared to be manufactured by Hornady.

Deputies found another 9 mm pistol in the smoking area, located under a chair. Inside the pocket of Gantz's jeans, deputies found a magazine cartridge for a 9 mm pistol.

Numerous bullet casings were also located around both the smoking area and inside the bar lounge of the bowling alley. Several of these bullet casings were 9 mm bullet casings. However, six of these bullet casings were .40 caliber

2

bullet casings, manufactured by Hornady. The police did not find a .40 caliber firearm at the scene of the shootings.

Detective Mike Mellis retrieved video surveillance footage from cameras that were located both inside the bowling alley and outside the entrance to the bowling alley. No video camera captured the events that occurred in the smoking area. Additionally, no witnesses to the shootings provided a statement to the police. Accordingly, the police were not able to determine how, exactly, the shootings in the smoking area had transpired.

However, while reviewing the video footage that captured the exterior of the entrance to the bowling alley, Detective Aaron Thompson observed an incident, which occurred approximately 25 minutes before the shootings, involving Robinson and three other men. In this video footage, Robinson and the defendant, Brandon Sullivan, walked together from the parking lot toward the entrance of the bowling alley. Robinson and Sullivan greeted a man who was wearing a striped shirt. The man in the striped shirt was never identified.

After several minutes, a fourth man exited the bowling alley and approached Robinson, Sullivan, and the man in the striped shirt. This fourth man was also never identified. After exiting the bowling alley, he conversed with Sullivan for approximately 30 seconds.

Robinson then punched the fourth man to the ground. While the man was on the ground, Sullivan walked toward the man and stood at his feet. Robinson then kicked and punched the man. A video recorded by a bystander captured Robinson reaching into the man's pocket. The man on the ground stated, "You

got my wallet dog, for real?" Robinson then took something from the wallet, put it in his pocket, and tossed the wallet to the ground.

During this time, Sullivan stood near the man's feet, crossing his hands at his waist. An enlarged image of Sullivan from the video captured by the bystander depicts Sullivan pressing an object, located on the exterior of his shirt, against his stomach and under his hands. At trial, in referring to the video footage captured by the bystander, Detective Thompson testified that, in his opinion, this object was a firearm:

> [DETECTIVE THOMPSON:] So you can see the flat, square shape of what I believe to be a gun here in his waist.
> [THE STATE:] And could you describe for the record where it is that you are pointing?
> [DETECTIVE THOMPSON:] It is not easy to see in this size but on the computer you can blow it up so it's larger but it is right kind of where his arms are crossed. Just above that, you can see the flat part of what I believe to be the handle of a handgun.

After discarding the wallet to the ground, Robinson again punched and kicked the man on the ground. The man in the striped shirt then entered the bowling alley and walked to the bar lounge.

The man on the ground eventually stood up and walked away from the bowling alley. Robinson followed along the right side of the man as he walked away. At the same time, Sullivan walked into the parking lot and positioned himself in a location with an unobstructed view of the man. Sullivan watched the man walk away.

Sullivan and Robinson then entered the bowling alley. Approximately one minute after the robbery, video surveillance footage from inside the bowling alley

4

captured the outline of an object located underneath Sullivan's shirt and at his right hip.[1]

Sullivan and Robinson then entered the bar lounge and exited to the smoking area. Nearly 10 minutes after Sullivan and Robinson entered the smoking area, the man who was robbed returned to Skyway Park Bowl and entered the bowling alley. The man walked through the bar lounge and exited to the smoking area.

Shortly thereafter, the man who had been robbed, followed by Sullivan and the man in the striped shirt, re-entered the bar lounge and walked to the entrance of the bowling alley. The man who had been robbed then left the bowling alley. Sullivan and the man in the striped shirt followed the other man outside and watched him as he walked away. Sullivan and the man in the striped shirt then re-entered the bowling alley.

Sullivan returned to the bar lounge. After Sullivan entered the bar lounge, the video camera located therein did not capture any footage for approximately 10 seconds. Sullivan was not located in the bar lounge after the camera again began capturing footage, indicating that he had exited to the smoking area.

Several minutes later, the bartender and several patrons suddenly ducked for cover. Sullivan then ran into the bar lounge from the smoking area. His right arm was extended and, in his right hand, he held an object, which resembled a pistol. Sullivan subsequently walked back to the smoking area, holding the object in his right hand. Approximately one minute later, Sullivan exited the

---

[1] Sullivan appears to have moved the object that he was pressing against his stomach on the exterior of his shirt during the robbery to a location underneath his shirt and at his right hip.

5

smoking area and ran toward the entrance of the bowling alley. He exited the bowling alley and ran into the parking lot.

Five days later, on August 23, 2017, police officers searched an apartment inhabited by Sullivan's girlfriend as authorized by a search warrant. Inside the apartment, police officers located a garbage bag, which contained mail addressed to Sullivan, an empty box of ammunition, and three .40 caliber bullets that were manufactured by Hornady.

As a result of the incident near the entrance to the bowling alley, the State charged Sullivan with one count of robbery in the first degree and one count of unlawful possession of a firearm. The robbery charge alleged that "the defendant was armed with a deadly weapon, to-wit: a firearm, and displayed what appeared to be a firearm, to-wit: a pistol, and inflicted bodily injury on" the victim. Prior to trial, Sullivan moved to bifurcate the trial proceeding with regard to each crime charged. The trial court granted the motion to bifurcate. The case proceeded to a jury trial.

At the conclusion of the proceeding on the robbery charge, the jury found Sullivan guilty of robbery in the first degree. The verdict form did not provide an expression of jury unanimity as to either of the alternative means charged. Additionally, the jury did not enter a verdict on the firearm enhancement special verdict form, leaving the form blank. Several days later, the same jury found Sullivan guilty of unlawful possession of a firearm in the first degree. The trial court imposed a sentence of 129 months of incarceration for the robbery

conviction and 116 months of incarceration for the unlawful possession of a firearm conviction, to run concurrently.

Sullivan appeals.

## II

Sullivan contends that the trial court erred by admitting certain evidence tending to prove that he participated in a shooting approximately 25 minutes after the robbery occurred. According to Sullivan, the trial court should have excluded this evidence pursuant to ER 404(b) because (1) the evidence was unrelated to the charge of first degree robbery, and (2) any relevance of the evidence was outweighed by its prejudicial effect. Because the evidence was material to elements of both crimes charged, we disagree.[2]

## A

When the admissibility of evidence is challenged by invocation of ER 404(b), we review a trial court's ruling to admit or exclude the evidence for abuse of discretion. State v. Fisher, 165 Wn.2d 727, 745, 202 P.3d 937 (2009). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. State v. Taylor, 193 Wn.2d 691, 697, 444 P.3d 1194 (2019).

---

[2] The trial proceeding was bifurcated with regard to the robbery and unlawful possession of a firearm charges. The only evidence admitted during the proceeding on the unlawful possession of a firearm charge was a stipulation that Sullivan had previously been convicted of a serious offense. Moreover, prior to deliberating on the unlawful possession of a firearm charge, the trial court instructed the jury that "[t]he evidence that you are to consider during your deliberations consists of the testimony that you have heard from witnesses, stipulations and the exhibits that I have admitted during the trial." Jury Instruction 1. Thus, when determining whether Sullivan was guilty of unlawful possession of a firearm, the jury was to consider the evidence admitted during the proceeding on the robbery charge. Accordingly, we consider the disputed evidence with regard to both crimes charged.

B

As a general rule, "[a]ll relevant evidence is admissible." ER 402. One

exception to this general rule is provided by ER 404(b), which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove
> the character of a person in order to show action in conformity
> therewith. It may, however, be admissible for other purposes, such
> as proof of motive, opportunity, intent, preparation, plan,
> knowledge, identity, or absence of mistake.

In determining whether evidence of other misconduct is admissible under

ER 404(b),

> the trial court must (1) find by a preponderance of the evidence that
> the misconduct occurred, (2) identify the purpose for which the
> evidence is sought to be introduced, (3) determine whether the
> evidence is relevant to prove an element of the crime charged, and
> (4) weigh the probative value against the prejudicial effect.

State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

"This analysis must be conducted on the record, and if the evidence is

admitted, a limiting instruction is required." State v. Arredondo, 188 Wn.2d 244,

257, 394 P.3d 348 (2017).

However, not all evidence tending to prove that a defendant engaged in

misconduct falls within the ambit of ER 404(b). As a noted scholar has

explained, ER 404(b) does not restrict evidence of acts that are closely

associated with the crime charged:

> Under ER 404(b), a defendant's *prior* misconduct is inadmissible to
> show propensity but may be admissible for some other limited
> purpose, such as showing motive or a common scheme or plan.
>      By time-honored tradition and case law, the rule does *not*
> bar evidence of misconduct that is close in time to the crime
> presently charged and directly relevant to proving the crime
> presently charged.

8

One way of looking at this aspect of the rule is to say that misconduct closely associated with the crime charged is simply not *prior* misconduct at all, so ER 404(b) is out of the picture. Another way of looking at the rule is to give it a Latin name—the res gestae *theory*—and refer to it as another exception to the general rule that prior misconduct is inadmissible. Either way, the evidence is admissible unless it is barred by some other rule.

5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 404.18, at 527 (6th ed. 2016).

Our cases are consistent with this analysis. Indeed, we have previously explained that "[a] defendant cannot insulate himself by committing a string of connected offenses and then argue that the evidence of the other uncharged crimes is inadmissible because it shows the defendant's bad character, thus forcing the State to present a fragmented version of the events." State v. Lillard, 122 Wn. App. 422, 431, 93 P.3d 969 (2004).

In Lillard, we described evidence of this sort as being admissible as an exception to ER 404(b): "Under the res gestae or 'same transaction' exception to ER 404(b), evidence of other crimes or bad acts is admissible to complete the story of a crime or to provide the immediate context for events close in both time and place to the charged crime." 122 Wn. App. at 432.

More recently, however, we have clarified that "res gestae evidence 'more appropriately falls within ER 401's definition of "relevant" evidence, which is generally admissible under ER 402,' rather than an exception to propensity evidence under ER 404(b)." State v. Dillon, 12 Wn. App. 2d 133, 148, 456 P.3d 1199 (quoting State v. Grier, 168 Wn. App. 635, 646-47, 278 P.3d 225 (2012)), review denied, 195 Wn.2d 1022 (2020).

9

In Grier, the court explained that "characterizing the 'res gestae' rule as an exception to ER 404(b) is indefinite, is prone to abuse, and 'tends merely to obscure' ER 404(b) analysis." 168 Wn. App. at 645 n.19 (quoting United States v. Krezdorn, 639 F.2d 1327, 1332 (5th Cir. 1981)). The court also noted that the "judicially created 'res gestae' exception bears little or no resemblance to the specific exceptions that ER 404(b) enumerates, inviting contemplation of the ejusdem generis rule of statutory construction." Grier, 168 Wn. App. at 645 (footnote omitted). This rule of statutory construction provides that "'[w]hen a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same type as those listed.'" Grier, 168 Wn. App. at 645-46 (quoting BLACK'S LAW DICTIONARY 556 (8th ed. 2004)). In the context of ER 404(b),

> [e]xcept for identity, the[] enumerated exceptions concern the defendant's state of mind or thought process. In contrast, "res gestae" evidence pertains to the factual context of the crime, not to the defendant's mindset. In our view, "res gestae" evidence is so unlike the expressly listed ER 404(b) exceptions that considering "res gestae" evidence to be an ER 404(b) exception contravenes the ejusdem generis doctrine.

Grier, 168 Wn. App. at 646.

In sum, evidence that completes the story of the crime charged or provides immediate context for events close in both time and place to that crime is not subject to the requirements of ER 404(b). Such evidence is not of *other* misconduct of the type addressed in ER 404(b).[3] See Grier, 168 Wn. App. at 647.

---

[3] We note that "Rule 404(b) restricts evidence of prior misconduct regardless of whether it occurred before or after the conduct for which the defendant is presently charged." 5 TEGLAND,

C

Turning to the evidentiary challenge at issue, ER 404(b) does not apply to the evidence in question. Prior to trial, Sullivan moved to exclude certain evidence tending to prove that he was involved in a shooting that occurred roughly 25 minutes after the robbery. His motion requested that the trial court "exclude any evidence of the murder, which includes but is not limited to the shell casings, the autopsy reports of both of the deceased and any mention of any person being shot or murdered at the Skyway Bowling Alley on the date of this incident."

During a pretrial hearing on Sullivan's request, the trial court denied the motion to exclude, reasoning that the evidence was admissible as being material to elements of both crimes charged and as res gestae evidence:

> THE COURT: . . . I think the presence of the bullets -- not just the shell casing but the bullets -- is evidence that arguably supports an essential element of the State's case both as to the robbery in the first-degree prongs. Certainly as to the firearm enhancement and then also to the unlawful possession count. And so there is going to be factual questions in this case about the presence of one or more guns during the robbery, the presence of one or more guns during the alleged shootout in the smoking area, and maybe the presence of guns in between that span and where they might have come from and their origins, and so forth. And Mr. Sullivan, my understanding of his defense is that he denies possessing a gun. He denies possessing a firearm and that the objects that we may see in those videos -- either he has nothing in his hand or they weren't guns. And the burden is going to be on the State to prove that they were, and that they weren't just gun-like objects but that they were guns.

---

supra, § 404.11, at 498; accord State v. Bradford, 56 Wn. App. 464, 467, 783 P.2d 1133 (1989) ("ER 404(b) applies to evidence of other crimes or acts regardless of whether they occurred before or after the alleged crime for which the defendant is being tried." (footnote omitted)). To avoid any ambiguity arising from the term "prior misconduct"—and because ER 404(b) uses the term "other," rather than the term "prior," when referencing the type of evidence that falls within its ambit—we use the term "other misconduct."

And so I agree with the State that the shell casings, while they are evidence that supports -- arguably supports the State's case, there is alternative theories as to why they might be there. And so the bullets are also direct or circumstantial evidence that are probative of whether Mr. Sullivan had a firearm. And I don't see ER 403 as a basis for excluding evidence of the shell casings, evidence of the bullets, and frankly unless there is a stipulation about where those bullets came from and the chain of custody, then I don't see a way that those bullets could be introduced into evidence without discussing the fact that they came from an autopsy. And frankly, I agree with the *res gestae* argument of the State that the events of that evening, early morning, whenever it was, are between three maybe four individuals who were at the Skyway Bowl and had these interactions over the course of that period during that day. The alleged robbery, Mr. Gantz leaving, allegedly coming back, whether he leaves and gets it done or comes back, whether there is an altercation, and then the resulting deaths are all part of the body of evidence in this case, all part of the story of this case. And to come up with a ruling that somehow excises Mr. Gantz from the story or what Mr. Sullivan is allegedly doing in the video when he is coming back into the bar from the smoking area, you know, telling that, explaining that without Mr. Gantz or the bullets or the shell casing I just think is not plausible. I don't see a way to do that without requiring that not just the State but also the Defense completely butcher up the facts of the case and tell it in snippets that are awkward and potentially incomprehensible and confusing to the jury. So I'm denying the Defense's motion to exclude.

The trial court did not abuse its discretion by denying Sullivan's motion to exclude. Robbery in the first degree may be proved by demonstrating that the defendant was armed with a deadly weapon during the robbery:

(1) A person is guilty of robbery in the first degree if:
    (a) In the commission of a robbery or of immediate flight therefrom, he or she:
        (i) Is armed with a deadly weapon.

RCW 9A.56.200.

"[A] firearm is considered a deadly weapon whether loaded or unloaded."

State v. Schelin, 147 Wn.2d 562, 567 n.2, 55 P.3d 632 (2002) (plurality opinion).

Additionally, unlawful possession of a firearm in the first degree requires a showing that the defendant "owns, has in his or her possession, or has in his or her control any firearm." RCW 9.41.040(1)(a). "'Firearm' means a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." RCW 9.41.010(11).

The bullet casings and bullets were evidence that was material to elements of both crimes charged. This evidence tended to prove that Sullivan possessed a firearm during the times in question. Indeed, the bullet casings and bullets were directly relevant to whether Sullivan possessed "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." RCW 9.41.010(11).

This evidence was also material to whether Sullivan was armed with a deadly weapon during the robbery. In the enlarged image from the video captured by the bystander, Sullivan is seen pressing an object, located on the exterior of his shirt, against his stomach and under his crossed hands. The bullet casings and bullets, along with the video surveillance footage of Sullivan in the bar lounge at the time surrounding the shooting, tend to prove that this object was a firearm. Additionally, the evidence tending to prove that Robinson and Gantz died from gunshot wounds was necessary to provide context for the evidence of bullet casings, bullets, and video footage of Sullivan inside the bar lounge at the time surrounding the shooting.

The evidence was material to an element of both crimes charged. It was not evidence of *other* misconduct. As such, ER 404(b) did not apply.

Sullivan's assignment of error fails.[4]

III

Sullivan next asserts that sufficient evidence does not support a finding that either he or Robinson was armed with a deadly weapon during the robbery. Accordingly, Sullivan avers, the State failed prove one of the alternative means of robbery in the first degree and the verdict cannot be sustained. We disagree.

Criminal defendants have a right to a unanimous jury verdict. WASH. CONST. art. I, § 21. However, our Supreme Court has explained that, "[i]n alternative means cases, where the criminal offense can be committed in more than one way, . . . an expression of jury unanimity is not required provided each alternative means presented to the jury is supported by sufficient evidence." State v. Sandholm, 184 Wn.2d 726, 732, 364 P.3d 87 (2015). When there is no particularized expression of jury unanimity and "insufficient evidence supports one or more of the alternative means presented to the jury, the conviction will not be affirmed." Sandholm, 184 Wn.2d at 732.

In reviewing the sufficiency of the evidence for a conviction, we view the evidence in the light most favorable to the State, draw all reasonable inferences from the evidence in the State's favor, and interpret the evidence most strongly against the defendant. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of both the State's evidence and

---

[4] Sullivan also asserts that the trial court erred by admitting the evidence under ER 403. "We review a trial court's ruling under ER 403 for abuse of discretion." Taylor, 193 Wn.2d at 697. Because the evidence was material to elements of both crimes charged, the evidence had substantial probative value. There was virtually no *unfair* prejudice to Sullivan's defense that arose from its admission.

all reasonable inferences from the evidence. Salinas, 119 Wn.2d at 201. Evidence is sufficient when "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

A person commits robbery in the first degree when, among other things, the defendant or an accomplice was armed with a deadly weapon or the defendant or an accomplice inflicted bodily injury. See RCW 9A.56.200; State v. Davis, 35 Wn. App. 506, 509, 667 P.2d 1117 (1983), aff'd, 101 Wn.2d 654, 682 P.2d 883 (1984). Sullivan does not contest that sufficient evidence supports a finding that Robinson inflicted bodily injury on the robbery victim. Thus, we must determine whether sufficient evidence was adduced to support a jury determination that either Sullivan or Robinson was armed with a deadly weapon during the robbery.

"To prove that a defendant is 'armed,' the State must show that 'he or she is within proximity of an easily and readily available deadly weapon for offensive or defensive purposes and [that] a nexus is established between the defendant, the weapon, and the crime.'" State v. Houston-Sconiers, 188 Wn.2d 1, 17, 391 P.3d 409 (2017) (alteration in original) (internal quotation marks omitted) (quoting State v. O'Neal, 159 Wn.2d 500, 503-04, 150 P.3d 1121 (2007)). "Such a nexus exists when the defendant and the weapon are 'in close proximity' at the relevant time." Houston-Sconiers, 188 Wn.2d at 17 (quoting State v. Gurske, 155 Wn.2d 134, 141, 118 P.3d 333 (2005)). "Sufficient evidence of nexus exists '[s]o long as the facts and circumstances support an inference of a connection between the

weapon, the crime, and the defendant.'" Houston-Sconiers, 188 Wn.2d at 17 (alteration in original) (quoting State v. Easterlin, 159 Wn.2d 203, 210, 149 P.3d 366 (2006)). "One should examine the nature of the crime, the type of weapon, and the circumstances under which the weapon is found (e.g., whether in the open, in a locked or unlocked container, in a closet on a shelf, or in a drawer)."[5] Schelin, 147 Wn.2d at 570.

Sufficient evidence supports a finding that Sullivan was armed with a deadly weapon during the robbery. First, a rational trier of fact could infer that, during the robbery, Sullivan had a firearm located on the exterior of his shirt and pressed against his stomach under his crossed hands. An enlarged image from the video captured by the bystander depicts Sullivan pressing an object, located on the exterior of his shirt, against his stomach and under his crossed hands. Detective Thompson testified that, in his opinion, this object was a firearm:

> [DETECTIVE THOMPSON:] So you can see the flat, square shape of what I believe to be a gun here in his waist.
> [THE STATE:] And could you describe for the record where it is that you are pointing?
> [DETECTIVE THOMPSON:] It is not easy to see in this size but on the computer you can blow it up so it's larger but it is right kind of where his arms are crossed. Just above that, you can see the flat part of what I believe to be the handle of a handgun.

---

[5] The trial court properly instructed the jury as to when a person is armed with a firearm:
> A person is armed with a firearm if, at the time of the commission of the crime, the firearm is easily accessible and readily available for offensive or defensive use. The State must prove beyond a reasonable doubt that there was a connection between the firearm and the defendant or an accomplice. The State must also prove beyond a reasonable doubt that there was a connection between the firearm and the crime. In determining whether these connections existed, you should consider, among other factors, the nature of the crime and the circumstances surrounding the commission of the crime, including the location of the weapon at the time of the crime.

Jury Instruction 27.

Additionally, approximately one minute after the robbery, video footage from inside the bowling alley captured the outline of an object that was underneath Sullivan's shirt and located at his right hip. Then, approximately 25 minutes after the robbery, video footage from inside the bar lounge at the time surrounding the shooting captured Sullivan, with his right arm extended forward, holding an object, which resembled a pistol, in his right hand.

In addition, six .40 caliber bullet casings, which were manufactured by Hornady, were recovered from the scene of the shooting. Gantz was killed by a .40 caliber bullet, which, according to a forensic scientist, appeared to be manufactured by Hornady. Yet no .40 caliber firearm was recovered from the scene of the shootings. Five days after the shooting, police officers found, inside a garbage bag at an apartment inhabited by Sullivan's girlfriend, three .40 caliber Hornady bullets, an empty box of ammunition, and mail addressed to Sullivan.

In light of all of this evidence, a rational trier of fact could have concluded that the object located under Sullivan's crossed hands during the robbery was a firearm, which was also a deadly weapon.

Second, sufficient evidence was adduced to establish a nexus between the weapon and the robbery. Based on the location of the firearm during the robbery, a rational trier of fact could have concluded that the firearm was used by Sullivan to (1) induce fear in the victim while he was being robbed, (2) encourage Robinson in committing the robbery, or (3) prepare Sullivan in the event that Robinson needed further assistance in consummating the robbery.

Sullivan's assignment of error fails.

IV

Sullivan also contends that sufficient evidence does not support a jury determination that he committed robbery in the first degree as either a principal or an accomplice. We disagree.

Under RCW 9A.08.020, a person is an accomplice to a crime if he or she knowingly "[s]olicits, commands, encourages, or requests" the commission of the crime or "[a]ids or agrees to aid" in the planning or commission thereof. "Mere presence of the defendant without aiding the principal—despite knowledge of the ongoing criminal activity—is not sufficient to establish accomplice liability." State v. Truong, 168 Wn. App. 529, 540, 277 P.3d 74 (2012). However, "[a]id can be accomplished by being present and ready to assist." State v. Collins, 76 Wn. App. 496, 501-02, 886 P.2d 243 (1995). Additionally, "it is encouragement plus the intent of the bystander to encourage that constitutes abetting." In re Welfare of Wilson, 91 Wn.2d 487, 492, 588 P.2d 1161 (1979).

Here, sufficient evidence supports a jury determination that Sullivan was present and either ready to assist or intended to encourage Robinson in committing the robbery. As already explained, sufficient evidence supports a finding that Sullivan was armed with a deadly weapon during the robbery. Moreover, the evidence was that Sullivan moved to a position whereby— standing at the victim's feet—he loomed over the victim as and after Robinson beat the victim while on the ground. A rational trier of fact could infer that, by being so armed and positioned, Sullivan either was ready to assist or intended to encourage Robinson in using force to take property from the victim's wallet.

Accordingly, sufficient evidence supported a jury determination that Sullivan was an accomplice to the robbery.

V

In a statement of additional grounds,[6] Sullivan contends that the trial judge violated what Washington case law has termed "the appearance of fairness doctrine."[7]  In turn, Sullivan asserts, his due process right to a fair trial was violated and his convictions should be reversed.  Because the trial judge did not violate the appearance of fairness doctrine, we rule against Sullivan's argument.

Criminal defendants have a due process right to a fair trial by an impartial judge.  U.S. CONST. amends. V, VI, XIV; WASH. CONST. art. I, § 22.  "Pursuant to the appearance of fairness doctrine, a judicial proceeding is valid if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing."  State v. Solis-Diaz, 187 Wn.2d 535, 540, 387 P.3d 703 (2017). "The law requires more than an impartial judge; it requires that the judge also appear to be impartial."  Solis-Diaz, 187 Wn.2d at 540.  "The test for determining whether the judge's impartiality might reasonably be questioned is an objective test that assumes a reasonable observer knows and understands all the relevant facts."  Solis-Diaz, 187 Wn.2d at 540.  "A party asserting a violation of the doctrine must produce sufficient evidence demonstrating bias, such as personal or pecuniary interest on the part of the decision maker; mere

---

[6] On June 2, 2021, Sullivan filed (1) a motion to file a late statement of additional grounds, and (2) a statement of additional grounds.  Because an order of our Supreme Court suspended the time requirements for filing certain motions under the Rules of Appellate Procedure, Order, No. 25700-B-611 In the Matter of the Suspension of RAP 18.8(b) and (c) in Response by Washington State Appellate Courts to the COVID-19 Public Health Emergency (Wash. Apr. 2, 2020), we grant Sullivan's motion to file a late statement of additional grounds.

[7] See, e.g., State v. Gamble, 168 Wn.2d 161, 187, 225 P.3d 973 (2010).

speculation is not enough." In re Pers. Restraint of Haynes, 100 Wn. App. 366, 377 n.23, 996 P.2d 637 (2000).

Sullivan asserts that the trial judge violated the appearance of fairness doctrine during a pretrial hearing on Sullivan's motion to exclude certain evidence. During the hearing, Sullivan's counsel argued that evidence tending to prove that Sullivan was involved in a shooting should be excluded with regard to the charge of unlawful possession of a firearm.

In response, the trial judge stated:

> That seems pretty extraordinary to me, Mr. Davenport, that you could argue that someone who discharges a weapon -- that the shell casings would be inadmissible in a firearm charge -- putting aside the robbery -- that the presence of shell casings would be inadmissible in a firearm possession trial because of 404(b) theory, which it sounds like you are arguing. Or a 403, that it is prejudicial because it suggests that a person is shooting into a crowded public area. I think that would need some pretty strong authority for the proposition that the shell casings are inadmissible to prove that there was a gun. And the only thing the State can rely on is grainy video or whatever. That seems pretty extraordinary.

Sullivan contends that "the trial court voiced his bias prejudice [sic] opinion by stating 'seems pretty extraordinary to me, Mr. Davenport, that you could argue that someone who discharges a weapon.'" According to Sullivan, '[t]he trial court indicated Mr. Sullivan shot or for verbatim words discharged a weapon" and, in turn, "plac[ed] guilt on Mr. Sullivan for a crime he's not charged of committing, violating the appearance of fairness doctrine and Mr. Sullivan's Due Process Rights."

To the contrary, the trial judge did not express an opinion as to whether Sullivan was guilty of any offense. Rather, the trial judge merely explained why

the 9 mm and .40 caliber bullet casings were material to whether Sullivan (1) possessed a firearm, and (2) was armed with a deadly weapon during the robbery.

The evidence suggested that either one or both of the decedents were the source of the 9 mm bullet casings. No .40 caliber firearm was found at the scene of the shootings. Yet video footage from inside the bowling alley around the time of the shooting depicts Sullivan holding an object that resembled a pistol in his right hand. Further, police officers discovered .40 caliber bullets, along with mail addressed to Sullivan, in a garbage bag at an apartment inhabited by Sullivan's girlfriend. The jury was instructed: "A 'firearm' is a weapon or device from which a projectile may be fired by an explosive such as gunpowder." Jury Instruction 12.[8] The .40 caliber bullet casings, then, tended to prove that Sullivan possessed a firearm.

Next, whether Sullivan possessed a firearm at the time of the shooting was material to whether the object located underneath his shirt and at his right hip approximately one minute after the robbery was a firearm. This, in turn, was material to whether the object under Sullivan's hands during the robbery was a firearm. Thus, the 9 mm and .40 caliber bullet casings were ultimately material to whether Sullivan was armed with a deadly weapon during the robbery.[9]

---

[8] This language mirrors the language from both the relevant Washington pattern jury instruction and statute. The pattern jury instruction reads: "A 'firearm' is a weapon or device from which a projectile may be fired by an explosive such as gunpowder." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.10.01 (4th ed. 2016). Likewise, RCW 9.41.010(11) states: "'Firearm' means a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder."

[9] The jury was instructed that "[a] firearm, whether loaded or unloaded is a deadly weapon." Jury Instruction 15.

21

The trial court did not violate the appearance of fairness doctrine.

VI

Sullivan requests that we remand the matter for resentencing in light of our Supreme Court's decision in State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021). Because resentencing appears to be warranted, we remand the cause to the superior court for Sullivan to be sentenced in a manner consistent with the Blake decision.

The convictions are affirmed. The sentences are reversed. The cause is remanded to the superior court for further proceedings consistent with this opinion.

_Dwyer, J._

WE CONCUR:

_Andrus, A.C.J._          _Mann, C.J._