IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85494-1-I |
| Respondent, | DIVISION ONE |
| v. | |
| NICHOLAS JAMES PINE-NELSON, | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, C.J. — After an altercation with his girlfriend's 16-year-old son, Nicholas Pine-Nelson was charged with and convicted of assault in the second degree and violation of a no-contact order. On appeal, Pine-Nelson contends that his trial counsel was ineffective for failing to object to inadmissible testimony of prior bad acts and that the prosecutor committed misconduct by injecting themes of domestic violence and child abuse in closing, by impugning defense counsel, and by misstating the burden of proof. Because counsel's failure to object did not result in prejudice and because the prosecutor's statements did not constitute misconduct, we disagree and affirm Pine-Nelson's convictions.

FACTS

In June 2021, Nicholas Pine-Nelson was living with his long-term girlfriend, Chelsea Bounds, and her 16-year-old son, E.E., in Concrete, Washington. Although Bounds and Pine-Nelson were not married, E.E. considered Pine-Nelson as his stepfather and Pine-Nelson thought of himself as a father figure to E.E.

The relationship between Pine-Nelson and Bounds was tumultuous at times. E.E. noted that Pine-Nelson's relationship with his mother had been getting "progressively worse" and that the two had "a lot of loud, verbal arguments." In early summer of 2021, Pine-Nelson and Bounds were in "a perpetual argument" with "a lot of screaming," and E.E. would sometimes stay with his grandmother when the fighting escalated.

On the afternoon of June 22, 2021, E.E. was outside digging a post hole for a fence while his mother and Pine-Nelson argued inside. Eventually, Bounds came outside and informed E.E. that they were going to stay at his grandmother's house. E.E. gathered his belongings and waited for his mother outside by the car. At one point, E.E. heard his mother tell Pine-Nelson, "You put your hands on me, you hurt me." In response, E.E. told Pine-Nelson, "If you put your hands on my mom, you're dead." Pine-Nelson then started walking toward E.E., taunting him. When Pine-Nelson reached E.E., he grabbed him by the throat, pushed him up against the car, and used his other hand to start punching E.E. in the shoulder. In an effort to defend himself, E.E. started hitting Pine-Nelson. E.E. testified that Pine-Nelson had him on the ground and "was directly on top" of E.E. with his face "just a couple of inches above [E.E.'s]." While E.E. and Pine-Nelson brawled, Bounds attempted to break them apart. Eventually, Bounds was able to pull Pine-Nelson off of E.E. Bounds and E.E. then left the house and drove to the Skagit County Sheriff's Department in Concrete. E.E. told the sheriffs what had transpired and reported that his leg hurt. After leaving

the sheriff's department, Bounds dropped E.E. off at his grandmother's house before returning to the home she shared with Pine-Nelson.

Pine-Nelson was later arrested and charged with assault in the fourth degree. Before being released, the district court issued a pretrial domestic violence no-contact order prohibiting Pine-Nelson from contacting E.E. further.

The day after the assault, Bounds took E.E. to a nearby hospital emergency room after he reported being unable to walk on his injured leg. Emergency room doctors diagnosed E.E. with a fractured leg.

A few days later, while still at his grandmother's house, E.E. requested that Bounds bring him his X-Box gaming console. When Bounds dropped off the console, E.E. discovered a handwritten note from Pine-Nelson taped to the bottom.

After learning of E.E.'s diagnosis and the note from Pine-Nelson, the State elevated Pine-Nelson's assault charge to assault in the second degree and also charged Pine-Nelson with one count of violating a no-contact order.

In February 2023, Pine-Nelson proceeded to trial. Following a jury trial, Pine-Nelson was convicted of assault in the second degree and of violating a no-contact order. Before sentencing, Pine-Nelson moved for a new trial, arguing that he received ineffective assistance of counsel at trial because he was unable to meet with his counsel to discuss the case, counsel did not inform him of a plea offer, and because his counsel failed to object to testimony about a prior altercation between Pine-Nelson and E.E. The court denied Pine-Nelson's motion. The court concluded that counsel's performance was not deficient with

regard to communicating with and advising Pine-Nelson. The court also concluded that counsel's failure to object to the testimony about a prior altercation fell below the objective standard of reasonableness for counsel's performance but that Pine-Nelson was not prejudiced by his counsel's failure to object. Pine-Nelson was sentenced to six months of confinement and twelve months of community custody.

Pine-Nelson appeals.

ANALYSIS

Ineffective Assistance of Counsel

Pine-Nelson contends that his trial counsel was ineffective for failing to object to E.E.'s testimony that Pine-Nelson had previously assaulted him and, on a separate occasion, Bounds. We agree with Pine-Nelson that counsel's failure to object to E.E.'s testimony about Pine-Nelson assaulting him on an earlier occasion was deficient performance, but disagree that any prejudice resulted. We also conclude that E.E.'s testimony about Pine-Nelson assaulting Bounds falls under the res gestae exception and, therefore, that Pine-Nelson's counsel was not deficient for failing to object to this testimony.

Criminal defendants are entitled to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I § 22; State v. Grier, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To succeed on a claim of ineffective assistance of counsel, a defendant must show (1) that their counsel's performance was deficient and (2) that prejudice resulted from that deficiency. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State

4

v. Thomas, 109 Wn.2d 222, 225, 743 P.2d 816 (1987) (adopting two-pronged Strickland test).

Counsel's performance is deficient if "it [falls] below an objective standard of reasonableness." State v. McFarland, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995). "Competency of counsel is determined based upon the entire record below." McFarland, 127 Wn.2d at 335. There is "a strong presumption that [defense] counsel's performance was reasonable." State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." Kyllo, 166 Wn.2d at 863. "Counsel engages in a legitimate trial tactic when foregoing an objection in circumstances when counsel wishes to avoid highlighting certain evidence." State v. Crow, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019). However, "[i]f a defendant centers their claim of ineffective assistance of counsel on their attorney's failure to object, then 'the defendant must show that the objection would likely have succeeded.' " State v. Vazquez, 198 Wn.2d 239, 248, 494 P.3d 424 (2021) (quoting Crow, 8 Wn. App. 2d at 508). Failure to object to inadmissible evidence constitutes deficient performance requiring reversal if the defendant can show that the result would likely have been different without the inadmissible evidence. Vazquez, 198 Wn.2d at 248-49.

To show prejudice, a defendant must demonstrate that there is "a reasonable probability that, but for counsel's [deficient performance], the result of the proceedings would have been different." Strickland, 466 U.S. at 694. This " 'reasonable probability' " standard is "lower than a preponderance standard"

and requires a defendant to "affirmatively prove prejudice" by showing more than a " 'conceivable effect on the outcome.' " State v. Estes, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (internal quotation marks omitted) (quoting Strickland, 466 U.S. at 694; State v. Crawford, 159 Wn.2d 86, 99, 147 P.3d 1288 (2006)). When reviewing whether counsel's conduct resulted in prejudice, we consider the "totality of the evidence" and "presume . . . that the judge or jury acted according to law." Strickland, 466 U.S. at 694-95.

Claims of ineffective assistance of counsel present a mixed question of law and fact that we review de novo. State v. Lopez, 190 Wn.2d 104, 116-17, 410 P.3d 1117 (2018).

1. Testimony About Prior Assault on E.E.

Pine-Nelson first asserts that his counsel performed deficiently by failing to object to E.E.'s testimony that Pine-Nelson had assaulted him on a prior occasion. He also argues that counsel's failure to object was not tactical because counsel was unaware of the allegation of a prior assault. We agree that this failure to object fell below the objective standard of reasonableness for counsel's performance, but disagree that Pine-Nelson suffered any prejudice as a result.

Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." To determine whether ER 404(b) evidence is admissible, the court must " '(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be

introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.' " State v. Gresham, 173 Wn.2d 405, 421, 269 P.3d 207 (2012) (quoting State v. Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

During cross-examination, the prosecutor asked Pine-Nelson whether there had ever been "any violence from [E.E.] or in the house before." Pine-Nelson replied: "I wouldn't say violence, no. There's been a few times that he's gotten in my face for—over homework, stupid stuff." The State then recalled E.E. to testify. The prosecutor asked E.E.,

| [STATE]: | Now there has been some kind of testimony that violence was not really a present thing in the house, but was there ever a previous time when he has gotten physical with you? |
|---|---|
| [E.E.]: | Yes, once before. |
| [STATE]: | And when was that? |
| [E.E.]: | About six months before the incident. |
| [STATE]: | Tell me what happened with that? |
| [E.E.]: | Me and [Pine-Nelson] were discussing some homework that I had done, and, basically, what happened is he thought one thing, I thought another. He started yelling at me. I finally said something back to him, and which he started pushing me into my room. |
| [STATE]: | Okay. And did you fight back or did you just— |
| [E.E.]: | He was pushing me, and I was pushing back in the opposite direction. |
| [STATE]: | And were the police called or anything on that incident? |
| [E.E.]: | No. |
| [STATE]: | Who started making things physical in that incident? |
| [E.E.]: | Nick did, in an attempt to, basically, put me in my room. |

7

Pine-Nelson's counsel did not object to this testimony and the State did not argue that the testimony served any purpose other than to prove action in conformity therewith. Therefore, this testimony was inadmissible 404(b) evidence. Because an objection by Pine-Nelson's counsel would likely have been sustained, counsel's performance was deficient.

Furthermore, Defense counsel's performance cannot be characterized as legitimate trial tactics. On cross-examination, defense counsel revealed that they were unaware of any allegation of a prior assault:

[DEFENSE]: [E.E.], this incident from six months prior, the pushing incident, we're hearing about this just now? Did you tell the prosecutor about this before?

[E.E.]: Yes.

. . .

[DEFENSE]: Okay. All right. I was just wondering why this is coming up now. Did somebody ask you to say this about the pushing incident from six months prior to June 22?

[E.E.]: It came up in the conversation with your investigator.

[DEFENSE]: Okay. Did it come up with the conversation with the prosecutor?

[E.E.]: Only after I had mentioned it to your investigator.

Because defense counsel's actions cannot validly be construed as a legitimate trial tactic, we agree with Pine-Nelson that his counsel was deficient for failing to object to inadmissible evidence. But establishing deficient performance is not the end of our analysis. Pine-Nelson must also demonstrate that his counsel's performance resulted in prejudice.

Here, Pine-Nelson contends that E.E.'s testimony resulted in extreme prejudice that was compounded when the prosecutor later referenced the

allegations during closing. During closing, the prosecutor told the jury: "[T]he only time that there was any previous physical altercation, the defendant started it. He started shoving [E.E.]."

We disagree that E.E.'s testimony coupled with the prosecutor's reference to the earlier incident was enough to sway the outcome of the proceedings. Even without E.E.'s testimony about the prior incident, overwhelming and undisputed evidence exists that Pine-Nelson assaulted E.E. in the present case. Pine-Nelson, Bounds, and E.E. all testified to the same chain of events: that Pine-Nelson approached E.E., that there were blows exchanged between the two of them, and that Pine-Nelson was on top of E.E. and hitting him. We also note that E.E.'s later testimony about the earlier incident was much shorter, did not involve any exchange of blows, and was not as descriptive as his testimony about the incident at issue in the present case. Similarly, the prosecutor's reference to a prior incident was only in passing; it was not a repeated theme throughout closing argument and was unlikely to have altered the outcome of trial.

2. Testimony About Prior Assault on Bounds

Pine-Nelson next contends that his counsel was deficient for not objecting to E.E.'s testimony that his mother said Pine-Nelson had hit her, which he contends was inadmissible hearsay that should have been excluded under ER 404(b). The State counters that such testimony was admissible under the res gestae exception. We agree with the State.

9

Res gestae evidence is evidence " 'admissible to complete the story of a crime or to provide the immediate context for events close in both time and place to the charged crime.' " State v. Dillon, 12 Wn. App. 2d 133, 148, 456 P.3d 1199 (2020) (quoting State v. Lillard, 122 Wn. App. 422, 432, 93 P.3d 969 (2004)). "Such evidence is not of *other* misconduct of the type addressed in ER 404(b)." State v. Sullivan, 18 Wn. App. 2d 225, 237, 491 P.3d 176 (2021).

Here, E.E.'s testimony that he heard Bounds say, "You put your hands on me, you hurt me," to Pine-Nelson provides context for the altercation between E.E. and Pine-Nelson. Bounds's statement triggered E.E. to tell Pine-Nelson, "If you put your hands on my mom, you're dead." Because the testimony explained why Pine-Nelson and E.E. were fighting, it provided immediate context for the charged crime. Such testimony was admissible under the res gestae exception and any objection to the testimony would likely have been overruled. Therefore, Pine-Nelson's counsel was not deficient for failing to object. And because counsel was not deficient, we conclude that Pine-Nelson suffered no prejudice.

## Prosecutorial Misconduct

Pine-Nelson also asserts that the prosecutor committed misconduct during closing argument by mentioning domestic violence and child abuse, by disparaging defense counsel, and by misstating the burden of proof. Because Pine-Nelson fails to show that this conduct was so flagrant and ill-intentioned as to result in incurable prejudice, we disagree.

We review claims of prosecutorial misconduct for an abuse of discretion. State v. Brett, 126 Wn.2d 136, 174-75, 892 P.2d 29 (1995). To prevail on a claim

of prosecutorial misconduct, a defendant must establish " 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.' " State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (internal quotation marks omitted) (quoting State v. Magers, 164 Wn.2d, 174, 191, 189 P.3d 126 (2008) (plurality opinion)).  However, when a defendant does not object to improper conduct at trial, the error is waived on appeal unless the defendant shows that the prosecutor's conduct "is 'so flagrant and ill-intentioned that it cause[d] an enduring and resulting prejudice that could not have been neutralized by a curative instruction.' " In re Pers. Restraint of Lui, 188 Wn.2d 525, 539, 397 P.3d 90 (2017) (alteration in original) (quoting In re Pers. Restraint of Caldellis, 187 Wn.2d 127, 143, 385 P.3d 135 (2016)).  "In other words, the defendant who did not object must show the improper conduct resulted in *incurable* prejudice." State v. Zamora, 199 Wn.2d 698, 709, 512 P.3d 512 (2022).

1. Statements About Child Abuse and Domestic Violence During Closing Argument

Pine-Nelson first argues that the prosecutor's statements during closing argument about domestic violence and child abuse were designed to deliberately inflame the jury.  We disagree.

"During closing argument, prosecutors have 'wide latitude to argue reasonable inferences from the evidence,' but they 'must seek convictions based only on probative evidence and sound reason.' " State v. Loughbom, 196 Wn.2d 64, 76-77, 470 P.3d 499 (2020) (internal quotation marks omitted) (quoting State

v. Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012)).  A prosecutor's statements during closing argument should be viewed in "context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury."  State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).  " 'The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.' "  Glasmann, 175 Wn.2d at 704 (quoting AM. BAR ASS'N, Standards for Criminal Justice std. 3-5.8(c) (2d ed. 1980)).

Here, Pine-Nelson contends that the prosecutor inflamed the jury by discussing themes of domestic violence and child abuse where Pine-Nelson was not charged with a crime related to domestic violence.  But Pine-Nelson *was* charged with a such a crime: he was charged with one count of violating a domestic violence no-contact order that protected E.E., a minor child.  And contrary to Pine-Nelson's assertion that the prosecutor's argument painted Pine-Nelson as a "serial abuser," we note that the prosecutor mentioned the phrases "domestic violence" and "child abuse" a handful of times only at the beginning of closing argument.[1]

Moreover, we note that the testimony at trial also supports an inference that this is a case about domestic violence involving a child.  E.E., Bounds, and

---

[1] During closing argument, the prosecutor stated:

When we hear words and phrases like domestic violence, domestic abuse, child abuse, we get this idea in our head of what we think that means.  We hear "domestic violence," we think maybe one spouse abusing another spouse.  We hear "child abuse," we think of maybe an adult beating on a small child who is unable to defend themselves.  This case represents what those principles look like when that child is old enough to try to defend himself.

Pine-Nelson all testified as to the same chain of events involving an altercation between Pine-Nelson (who is like a stepfather to E.E.) and E.E. (who had just turned 16 years old at the time).  Because domestic violence was mentioned infrequently and because the evidence and issues involved indicated that this was a case about domestic violence, we disagree with Pine-Nelson that the prosecutor's conduct in mentioning domestic violence and child abuse during closing was so flagrant and ill-intentioned as to cause incurable prejudice.

2.  Impugning Defense Counsel

Pine-Nelson next contends that the prosecutor impugned defense counsel during closing argument by remarking that it was "suspicious" that Bounds refused to meet with the State before meeting with defense counsel.  We are unpersuaded.

"It is improper for the prosecutor to disparagingly comment on defense counsel's role or impugn the defense lawyer's integrity."  Thorgerson, 172 Wn.2d at 451.  For example, referring to defense counsel's presentation as "bogus," involving "sleight of hand," or as "crock" impugns defense counsel because such terms imply deception and dishonesty.  State v. Lindsay, 180 Wn.2d 423, 433-34, 326 P.3d 125 (2014).

Here, during closing argument, the prosecutor highlighted Bounds's lack of responsiveness:

> You heard about my office's attempts to get in contact with her—numerous phone calls, sending an investigator out multiple times, leaving letters—everything.  And you heard—and she admitted all of this—you heard that, as of the moment we started this trial, I had never been able to talk to her.  And then all of a

sudden, at 3:00 on Monday, she shows up in the courtroom.  No word.

And when asked why she came here, the defendant asked her to.  No cooperation with my office.  No contact with my office.  She was very confusing and vague about whether she knew this trial was going on—she obviously knew this trial was going on.  She obviously did not want to show up and participate, but she did when the defendant asked her to show up.

. . .

When she did show up here, I asked her, you know, can I go talk to you, you know, do you mind coming over to my office so we request to do a quick interview?

Well, I'm going to talk to, you know, I'm going to talk to Nicholas first and Mr. Roth.  I'm not suggesting by any means that Mr. Roth did anything untoward, right, but the suspicious nature of this meeting beforehand with the defendant, knowing that she's about to come over and be interview[ed] by me, and the first time we ever hear any of her side of anything is 3:30 on Monday.  This is the first time we're hearing, "Well, I didn't see or hear anything."  The first time we've heard, "I must have inadvertently took this note over."

These statements refer to Bounds's credibility and potential bias and are not intended to impugn defense counsel.  The prosecutor's use of the word "suspicious" referred to Bounds's actions, not those of defense counsel.  Also, the prosecutor's statements did not imply, as Pine-Nelson suggests, that the prosecutor's office is the "arbiter of witness truth."  Instead, these statements highlighted what the jury should have considered in judging Bounds's credibility.  Because the prosecutor's statements did not impugn defense counsel, we disagree that they constituted misconduct.

3.  Whether the Prosecutor Misstated the Burden of Proof

Pine-Nelson also asserts that the prosecutor diluted the burden of proof and the presumption of innocence by telling jurors that the State only needed to

14

prove the elements of the crimes charged and by telling the jurors that Pine-Nelson did not get any "extra" benefit of the doubt.  We disagree.

"[I]t is an unassailable principle that the burden is on the State to prove every element and that the defendant is entitled to the benefit of any reasonable doubt.  It is error for the State to suggest otherwise."  State v. Warren, 165 Wn.2d 17, 26-27, 195 P.3d 940 (2008).

Pine-Nelson contends that the prosecutor urged the jury to disregard the presumption of innocence by telling the jury: "Now, [Pine-Nelson] testified, and you judge his testimony, his credibility exactly the same way as you would anybody else's.  He doesn't get any extra weight.  He doesn't get any extra benefit of the doubt."  But these statements do not undermine the presumption of innocence; they speak to how the jury is to judge Pine-Nelson's credibility.  The comments about "extra weight" and "extra benefit of the doubt," taken in context, were merely an inarticulate way of telling the jury that Pine-Nelson's testimony was to be scrutinized in the same manner as testimony from any other witness.  This is not an inaccurate statement of law, and therefore, not misconduct.

Pine-Nelson also maintains that the prosecutor misstated the burden of proof by telling the jury that the State only had to prove the elements in the to-convict instructions and the self-defense instruction beyond a reasonable doubt.  Instead, Pine-Nelson contends that the prosecutor had to prove every element of the charged crimes beyond a reasonable doubt and that this "necessarily includes the definitions for the elements."  This is a misstatement of law and Pine-Nelson provides no authority for this proposition.  The State's burden is to

prove the essential elements of the crimes charged; this does not necessarily include definitions of terms within the jury instructions.

4. <u>Cumulative Prejudice</u>

Finally, Pine-Nelson maintains that even if a single instance of misconduct was not prejudicial, the cumulative effect of multiple alleged instances of misconduct was incurably prejudicial. We disagree. Because none of the prosecutor's statements were prejudicial, the statements taken together are not incurably prejudicial.

Affirmed.

_Smith, C.J._

WE CONCUR:

_Díaz, J._                    _Bowman, J._