IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36169-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| JAMAICA CHRISTINA RILEY, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — A fundamental tenet of a fair trial is that parties and witnesses are to be judged by what they have said or done, not by who they are. For this reason, the rules of evidence restrain the admissibility of character evidence. Specific instances of a party's or witness's bad conduct ordinarily cannot be introduced as evidence to prove the party or witness acted in conformity therewith. However, bad conduct evidence can be admissible for other reasons. And character evidence is sometimes permissible through reputation testimony or during cross-examination regarding specific instances of dishonest conduct.

The narrow ins and outs of the character evidence rules can pose a considerable challenge for trial judges. This is especially true in emotion-laden cases, such as ones where the involved parties are sorting through a marital dissolution or a family dispute.

1

Here, the trial judge adequately marshaled the admissibility of character evidence in a criminal telephone harassment case involving divorcing spouses. We therefore affirm the judgment of conviction.

## FACTS

Jamaica Riley and John Pink separated after 13 to 14 years together. They had two children. Shortly after the separation, Mr. Pink moved out of the family home and later contacted the utility company to remove his name from the power bill. A utility worker was dispatched to the residence, where he encountered Ms. Riley. When the worker stated the reason for his presence, Ms. Riley became upset. She then made two telephone calls to Mr. Pink. The content of those calls gave rise to the two counts of telephone harassment at issue in this case.

During the first call, Ms. Riley yelled at Mr. Pink and threatened to shoot him in the head. The utility worker was present within earshot during this call. He did not recall Ms. Riley's threat to shoot Mr. Pink, but he did overhear Ms. Riley curse and issue other threats. Both Mr. Pink and the worker described Ms. Riley as angry and loud. In describing Ms. Riley's tone of voice, Mr. Pink stated she "was screaming and very shaky, and it was extremely scary." Report of Proceedings (RP) (June 5, 2018) at 31. Mr. Pink explained he was afraid Ms. Riley would act on her threat because Ms. Riley owned two

2

guns and Mr. Pink knew Ms. Riley was "a very good shot," and "usually meant what she said." *Id*. at 31-32.

Ms. Riley's second call came after Mr. Pink had contacted the county sheriff. A deputy was with Mr. Pink at the time of the call and listened in on Ms. Riley's statements. During the second call, Ms. Riley stated Mr. Pink would "be lucky to leave in an ambulance" if he came to pick up their children later that day, as had been previously arranged. *Id*. at 37. The sheriff's deputy recalled Ms. Riley stating something to the effect, "'[i]f you try and pick up my kids I guarantee you will leave in an ambulance.'" *Id*. at 70. Mr. Pink interpreted Ms. Riley's statements regarding the ambulance as a legitimate threat to his safety.

The State charged Ms. Riley with two counts of telephone harassment, one count of witness tampering, and one count of violating a protection order.[1] Ms. Riley exercised her right to a jury trial.

Prior to trial, the State successfully moved to exclude four of Ms. Riley's witnesses. Two witnesses (Alyssa Kaye Turner and Joseph Riley) were to testify Mr. Pink

---

[1] The conduct for the latter two counts occurred after the threats, and does not substantively relate to the issues Ms. Riley raises on appeal. Originally, the State charged Ms. Riley with two counts of felony telephone harassment. During trial, one of the felony telephone harassment counts was amended to a misdemeanor.

had made a false police report against Ms. Riley. According to the defense proffer, the

testimony was relevant for impeachment. The other two witnesses (Rebecca Pink and

Tara Krier) were to testify that they had not observed any marital discord between Ms.

Riley and Mr. Pink. The defense claimed this testimony was relevant to challenge the

notion that "Mr. Pink had a reasonable fear that Ms. Riley would carry out a threat."

Clerk's Papers (CP) at 10.[2]

The defense unsuccessfully moved to exclude a State witness named Misty Black.

Ms. Black was to testify she had seen Ms. Riley slap Mr. Pink in the back of the head

on numerous occasions.[3] According to the State, Ms. Black's testimony was relevant

to prove Mr. Pink reasonably feared Ms. Riley would carry out her telephone threats.

---

[2] The entire proffer was as follows: Rebecca Pink would testify "she has seen John Pink and Jamaica Riley interact on a number of occasions and has never seen them violent or angry with each other and that such a characterization is not consistent with the dynamic the couple had." CP at 10. Tara Krier would testify "she has known John Pink and Jamaica Riley for more than 15 years and that based on a lack of violence of conflict, Mr. Pink would not have reasonable fear that Ms. Riley would carry out a threat." *Id.*

[3] The pretrial proffer was Ms. Black would testify she had known John Pink and Jamaica Riley "'for approximately the last two years. We would hang out as families and go camping and do other activities. Throughout that entire time I witnessed Jamaica hit or slap John numerous times in anger. I saw her smack him in the back of the head numerous times because she was upset over very minor things like ordering the wrong type of pizza. I never witnessed John become physical with Jamaica in any way. He would usually hang his head and act ashamed over these incidents.'" RP (June 5, 2018) at 9.

4

The defense argued Ms. Black's testimony was not relevant because testimony that Ms. Riley was abusive and had hit her husband in the head was "not relevant to a person being afraid of being shot." RP (June 6, 2018) at 91. The court disagreed.

At trial, the State's evidence was consistent with the foregoing summary and judicial rulings. In addition, Mr. Pink testified over objection about additional instances of threatening conduct by Ms. Riley. Mr. Pink claimed that on at least a dozen occasions Ms. Riley exhibited fits of rage while driving the family car. During these incidents, Ms. Riley would accelerate to over 130 miles per hour and then slam the gears of the car in order to frighten Mr. Pink and the couple's children. Mr. Pink also testified Ms. Riley often threw objects at his head such as plates, cell phones, and rocks.

According to Mr. Pink, Ms. Riley's angry outbursts were a daily occurrence. Ms. Riley was very aggressive and would frequently smack or kick Mr. Pink. One time, Mr. Pink recalled Ms. Riley scratched his left forearm with four fingernails, "from the elbow all the way to the wrist." RP (June 5, 2018) at 33-34. On another occasion, Ms. Riley kicked Mr. Pink in the ribs, knocking him out of the bed.

Ms. Riley took the stand and testified in her own defense. Ms. Riley discussed the two phone calls between herself and Mr. Pink. She agreed the calls were heated, but denied making any threats. Ms. Riley also denied ever hitting Mr. Pink or engaging in

other violent acts. According to Ms. Riley, her marriage to Mr. Pink was "a fairy tale relationship." RP (June 6, 2018) at 126.

After the close of evidence, the court instructed the jury on telephone harassment, including the requirement that the State prove Ms. Riley had issued a true threat.[4] The threat instruction stated as follows:

> Threat means to communicate, directly or indirectly, the intent to cause bodily injury in the future to the person threatened or to any other person.
> To be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk.

CP at 30.

The jury convicted Ms. Riley on two counts of telephone harassment and one count of violating a protection order. It acquitted her of witness tampering. The court sentenced Ms. Riley to 10 months' confinement and $700 in legal financial obligations, including a $200 criminal filing fee.

Ms. Riley appeals.

---

[4] The misdemeanor telephone harassment count required proof of threat to injure. The felony count required proof of a threat to kill.

6

ANALYSIS

*Admission of other act evidence*

ER 404(b) governs the admissibility of other act evidence. The rule prohibits admission of extraneous "crimes, wrongs, or acts" for the purposes of proving bad character. But not all other act evidence is prohibited. In particular, other act evidence is admissible in a criminal case if relevant to proving an essential component of the State's case. *State v. Foxhaven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007). Before admitting other act evidence under ER 404(b), the trial court is required to conduct the following four-step inquiry on the record:

> (1) find by a preponderance of the evidence that the misconduct occurred,
> (2) identify the purpose for which the evidence is sought to be introduced,
> (3) determine whether the evidence is relevant to prove an element of the
> crime charged, and (4) weigh the probative value against the prejudicial
> effect.

*State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). If, despite the requirement for an explicit record, the trial court fails to document its ER 404(b) analysis, we may review its decision de novo. *See State v. Jackson*, 102 Wn.2d 689, 694, 689 P.2d 76 (1984) (reviewing trial court's ruling de novo where trial court did not conduct four-part analysis on the record); *State v. Trickler*, 106 Wn. App. 727, 733, 25 P.3d 445 (2001) (same); *State v. Barragan*, 102 Wn. App. 754, 759, 9 P.3d 942 (2000) (same).

7

The thrust of Ms. Riley's argument is that the trial court should have restricted the scope of the State's other act evidence, aimed at explaining why Mr. Pink reasonably feared Ms. Riley would carry out her telephone threats.[5] Ms. Riley does not dispute the State was entitled to elicit evidence on the issue of Mr. Pink's reasonable fear of harm.[6] Her argument is the State's other act evidence was too dissimilar to the charged conduct to give rise to a reasonable fear of harm.

Ms. Riley's arguments implicate the third and fourth components of the ER 404(b) analysis: relevance and undue prejudice. There is no serious dispute that the court had sufficient evidence the prior acts occurred, based on the testimony from John Pink and

---

[5] Ms. Riley also points out the trial court overruled an objection to Mr. Pink's testimony regarding the facts leading up to the couple's separation. Although the trial court likely should have struck this testimony, Ms. Riley fails to explain why this testimony deprived her of a fair trial, particularly in light of the uncontested fact that Ms. Riley and Mr. Pink had a contentious divorce. We therefore need not address the issue further. *State v. Dennison*, 115 Wn.2d 609, 629, 801 P.2d 193 (1990).

[6] The crime of telephone harassment requires proof of a true threat. *State v. Tellez*, 141 Wn. App. 479, 483, 170 P.3d 75 (2007). The jury was therefore required to find that a reasonable person *in Ms. Riley's position* would have foreseen the words uttered to Mr. Pink would be interpreted as a serious expression of an intent to cause harm. Unlike the crime of generic harassment, the State is not also required to prove Ms. Riley's words placed Mr. Pink "in reasonable fear that the threat would be carried out." RCW 9A.46.020(1)(b). The distinction between what would be reasonably understood by the defendant, as opposed to the victim, is subtle and has not been addressed either at trial or on appeal. We operate under the parties' apparent assumption that proof of whether Mr. Pink had a reasonable fear of harm was relevant to whether Ms. Riley reasonably would have foreseen him to have a fear of harm.

8

Misty Black. And the noncharacter purpose of the State's evidence (proof of reasonableness of threatened harm) was made explicit on the record.

We agree with the State that the third and fourth components of the ER 404(b) test are met in this case. The breadth of admissible other act evidence depends on what the State is seeking to prove. For example, when other act evidence is proffered to prove identity through modus operandi, "'a high degree of similarity'" is required so "'as to mark [the prior act] as the handiwork of the accused.'" *State v. Coe*, 101 Wn.2d 772, 777, 684 P.2d 668 (1984) (quoting *United States v. Goodwin*, 492 F.2d 1141, 1154 (5th Cir. 1974)). It is only when a prior act and a charged crime share distinct or unusual characteristics that the prior act is relevant to proving identity. *Id*. at 777-78. But other act evidence proffered to prove reasonableness of threatened harm is different. In order to explain why the defendant's words constituted a true threat, which would reasonably be interpreted as a serious threat of harm, the State must be able to place the defendant's statement in "context." *State v. Ragin*, 94 Wn. App. 407, 412, 972 P.2d 519 (1999). "The jury [is] entitled to know what [the victim] knew at the time" the defendant issued the threat to decide whether it constituted a true threat. *Id*. The issue of similarity is not part of the analysis.

Here, the crux of the parties' dispute was whether Ms. Riley's telephone statements could reasonably be interpreted as true threats of harm. During closing argument, the defense likened Ms. Riley's words to the taunts of a high school football team: "'We're gonna maul the other team, we're gonna kill 'em, we're gonna murder 'em.'" RP (June 6, 2018) at 208. Ms. Riley characterized Mr. Pink as not really concerned by Ms. Riley's statements and that he would simply call the police "pretty much at the drop of a hat . . . whether he's concerned or not, whether he's worried or not. Whether he's in fear or not." *Id*. at 213. In light of the parties' competing theories, the State was entitled to present the jury information regarding what Mr. Pink knew at the time of Ms. Riley's calls that gave rise to a reasonable fear of harm. Ms. Riley's criticism of the quality of the State's proof went to the weight of the State's case and provided fodder for argument, but it did not bar admission of the evidence.

## Exclusion of defense witnesses

Ms. Riley claims she was deprived of her right to present a defense when the court excluded two sets of witnesses. The first set of witnesses (Alyssa Kaye Turner and Joseph Riley) were proferred to impeach Mr. Pink's credibility through testimony that Mr. Pink engaged in misconduct by making a false report against Ms. Riley to police. The second set of witnesses (Rebecca Pink and Tara Krier) would have testified Ms. Riley and Mr.

Pink did not have a violent relationship, thereby challenging the State's other act evidence under ER 404(b). We find no error in the trial court's orders, as Ms. Riley failed to show the proffered testimony would be admissible under the rules of evidence.

*Impeachment through specific instances of misconduct*

ER 608(b) addresses the circumstances under which a witness may be impeached through specific instances of misconduct. The rule provides that, except as allowed by ER 609 (impeachment by evidence of criminal conviction), extrinsic evidence of prior instances of misconduct may not be introduced to support or impeach a witness's testimony. In this context, "extrinsic evidence" means evidence "adduced by means other than cross examination of the witness." BLACK'S LAW DICTIONARY 700 (11th ed. 2019).

Here, Ms. Riley sought to impeach Mr. Pink's credibility by introducing witness testimony that Mr. Pink had engaged in specific instances of dishonest behavior. Under ER 608(b), Ms. Riley was welcome to cross-examine Mr. Pink regarding his character for truthfulness by referencing specific instances of misconduct. However, if Mr. Pink denied the misconduct, Ms. Riley would have been required to take Mr. Pink at his answer. *United States v. Herzberg*, 558 F.2d 1219, 1223 (5th Cir. 1977) (Under Federal Rule of Evidence 608(b), "[t]he cross-examining attorney must take the witness' answer.").

Ms. Riley was not allowed to impeach Mr. Pink through witness testimony. The trial

court's ruling excluding Ms. Riley's evidence was therefore appropriate.

*Rebuttal of State's ER 404(b) evidence*

Ms. Riley argues that because the trial court allowed the State to introduce

evidence under ER 404(b) regarding prior acts of aggression by Ms. Riley against Mr.

Pink, she should have been allowed to present rebuttal testimony from witnesses who

would state they had never seen such conduct. This argument misses the mark. Had

Ms. Riley's witnesses been present during a specific instance when Mr. Pink had been

assaulted or threatened, their testimony would have been admissible as direct rebuttal.

Alternatively, the testimony might have qualified as rebuttal evidence if the witnesses had

been together with Ms. Riley and Mr. Pink with sufficient regularity that they likely

would have been present during any alleged acts of violence. But Ms. Riley made no such

claims. Instead, she argued her witnesses were generally familiar with the interactions

between Ms. Riley and Mr. Pink and they had never observed any violent conduct. This

was not rebuttal testimony and was not admissible as such.

The fact that Ms. Riley's witnesses could not directly rebut the State's claims

regarding prior acts of aggression did not strip the defense of options. ER 404(a)(1)

provided Ms. Riley an avenue for introducing evidence of a pertinent character trait, such

peacefulness. Under our state's evidence rules, Ms. Riley could have attempted to

introduce evidence of her peaceful character through reputation evidence. ER 405(a).[7]

But she did not do so.[8] Ms. Riley was not entitled to circumvent the evidentiary

prerequisites of reputation testimony by recasting peaceful character evidence as rebuttal

testimony. The trial court was well within its discretion in excluding Ms. Riley's

witnesses.

## *Legal financial obligations*

As a final argument, Ms. Riley seeks relief under Washington's reformed legal

financial obligation laws, claiming the $200 criminal filing fee imposed against her

---

[7] Unlike the federal rules of evidence, Washington's evidence rules do not permit character evidence to be proved by opinion testimony. *State v. Kelly*, 102 Wn.2d 188, 194-95, 685 P.2d 564 (1984); FED. R. EVID. 405. The state rules therefore limit the manner in which a litigant can present evidence relevant to the jury's assessment of guilt or innocence. Such limitation appears unnecessary and perhaps even unwise. Nevertheless, it is not this court's role to rewrite the evidence rules. Although an accused person has a constitutional right to present a defense, the scope of that right does not include introduction of otherwise inadmissible evidence. *State v. Aguirre*, 168 Wn.2d 350, 363, 229 P.3d 669 (2010).

[8] This is not a rare case where character evidence is "an essential element of a charge, claim, or defense," and therefore may be proved by specific instances of conduct. ER 405(b). *See Kelly*, 102 Wn.2d at 196-97 ("In criminal cases, character is rarely an essential element of the charge, claim or defense."). The prior acts of violence between Ms. Riley and Mr. Pink were relevant to proving a noncharacter element of the offense: whether Ms. Riley's words would be reasonably interpreted as a threat. Character or a character trait was not, itself, an essential element of proof.

should be struck pursuant to RCW 36.18.020(2)(h) and *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). The State concedes relief is appropriate based on Ms. Riley's indigence under RCW 10.101.010(3)(a). We therefore grant Ms. Riley's request and order the $200 filing fee struck from the judgment and sentence.

## CONCLUSION

The judgment of conviction is affirmed. This matter is remanded with instructions to strike the $200 criminal filing fee from Ms. Riley's judgment and sentence. Appellate costs shall not be imposed.

_____, C.J.
Pennell, C.J.

I CONCUR:

_____
Siddoway, J.

14

No. 36169-1-III

FEARING, J. (dissenting) — As a general rule, the State may not introduce evidence of an accused's earlier bad acts. ER 404(b). In turn, although the accused may introduce evidence of a good character, the accused generally may not introduce evidence of the absence of earlier bad acts. In Jamaica Riley's prosecution, however, the State presented evidence of earlier abusive and assaultive conduct of Riley in order to prove John Pink's fear of Riley. Riley could not, however, rebut such evidence with testimony of the absence of such behavior.

The State submitted testimony from Misty Black that she saw Jamaica Riley slap John Pink numerous times. Black also testified that John Pink did not retaliate in turn.

John Pink averred that Jamaica Riley daily engaged in angry outbursts. Pink testified that, in addition to Riley smacking him, Riley, on other occasions, scratched his arm and kicked him in the ribs. Pink testified that Riley threw plates, cellphones, and rocks at him. He testified that sometimes, when Riley drove the car with him and the children as passengers, Riley accelerated to 130 miles per hour and slammed the gears of the car to frighten him and the children. Despite this extensive evidence of earlier bad

15

conduct of Jamaica Riley toward John Pink, the trial court precluded Jamaica Riley from presenting testimony from Rebecca Pink that she had seen the husband and wife interact and never observed either of them violent or angry with the other. The court precluded testimony from Tara Krier that she knew the couple for fifteen years, she never saw a violent act between the two, and John Pink would not have had a reasonable fear that Riley would consummate a threat.

So the State presented extensive and demoralizing evidence painting Jamaica Riley as a circadian violent person, but Riley could not present third-party witness testimony to state that the witness never saw Riley become violent toward John Pink. Taint fair.

Jamaica Riley, during her testimony, denied any of the alleged violent acts attributed to her by John Pink and other State witnesses. The jury, of course, would have questioned the credibility of Riley because of her being the accused. Riley deserved the opportunity to have other witnesses, who observed the interaction between the parties, to testify to observations since the jury could consider the other witnesses credible.

Admittedly, Jamaica Riley's tendered witnesses did not plan to testify to Riley's character or reputation for engaging in violent acts or for not engaging in abusive behavior. They intended to testify to the lack of earlier bad acts, and Riley could have engaged in many acts of violence out of the sight of the witnesses. But the State

16

presented a theory that Jamaica Riley extensively and routinely engaged in violence. When John Pink testified to daily angry outbursts, Riley should have gained the right to call to testify someone who spent significant time with the couple, but saw no violent acts. At least the trial court should have inquired as to the amount of time that the witnesses spent with the couple before precluding the testimony. The majority analyzes the appeal as simply one involving the admissibility of prior bad act evidence or the lack of earlier wrongful conduct. The majority fails to analyze the appeal as one demanding an opportunity for an accused to rehabilitate her character because of the attacks meted by the State to that character.

Tara Krier's and Misty Black's testimony would not have been admissible if the State had not presented testimony of conduct of Jamaica Riley other than the conduct that formed the criminal charges. But the two witnesses' testimony became admissible when the State opened the door and presented testimony of a long and tortured history of violence. Tara Krier should not have been able to testify as to whether John Pink would or would not have a reasonable fear, but should have been able to testify as to her observations, which observations counter the State's testimony.

Washington courts allow the State to present rebuttal evidence as to character and the prior bad acts of the accused when the accused places his or her character in issue.

17

No. 36169-1-III
*State v. Riley* (Dissent)


*State v. Young*, 158 Wn. App. 707, 719, 243 P.3d 172 (2010); *State v. Brush*, 32 Wn.

App. 445, 450, 648 P.2d 897 (1982).  The stated rule must apply in favor of the accused

also.  *Barker v. Commonwealth*, 209 Ky. 817, 273 S.W. 503, 504-05 (1925).

I would reverse the convictions for telephone harassment and remand for a new

trial.


_____
Fearing, J.