IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39703-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY D. SINGH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, A.C.J. — Anthony D. Singh was charged with one count of second degree assault by alternative means and misdemeanor harassment. His second degree assault charge was based on circumstantial evidence that Singh struck his partner, Paez, in the head. The alternative means charged for second degree assault was that Singh (1) caused substantial bodily harm, or (2) that he assaulted her with a deadly weapon. In addition, the misdemeanor harassment conviction was based on a statement Singh made to Paez regarding her daughter that he would "beat the shit out of that child" so he could go to bed. Singh was convicted on both charges.

On appeal, Singh challenges his assault conviction, arguing that his right to a unanimous jury verdict was violated because there was insufficient evidence to support one of the alternative means—that he assaulted Paez with a deadly weapon. In addition,

he claims that the trial court abused its discretion in admitting evidence as res gestae that

Singh assaulted another girlfriend moments before he struck Paez. We conclude that

these arguments fail.

Singh also advances two arguments challenging his misdemeanor harassment

conviction. First, he contends his conviction for misdemeanor harassment must be

reversed and dismissed due to insufficient evidence on two essential elements: (1) that

Paez was placed in fear as a result of his statement, and (2) that he was subjectively

aware his statement would be perceived as a true threat under the new *Counterman*[1]

standard. In the alternative, he argues that the trial court erred by failing to instruct the

jury about the new law regarding a defendant's subjective awareness when making a true

threat.

Viewing the evidence in a light most favorable to the State, there was sufficient

evidence for a jury to find the two contested elements of harassment. However, while the

evidence was sufficient, the jury instructions were not. The to-convict jury instructions

failed to instruct the jury on the necessary element of Singh's reckless mens rea.

Applying the constitutional harmless error standard, we conclude that this error was not

harmless beyond a reasonable doubt.

---

[1] *Counterman v. Colorado*, 600 U.S. 66, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023).

We affirm Singh's conviction for second degree assault and reverse without prejudice his conviction for misdemeanor harassment. Any sentencing issues can be raised on remand.

BACKGROUND

On December 4, 2021, police responded to the home of Tiffany Paez after her friend, Brown,[2] had received a series of concerning texts from Paez around 3:54 a.m. Once police arrived, they noticed Anthony Singh and Paez standing in the entryway to the home. After noticing that Paez was visibly upset with blood dripping from her head, an officer directed her over to the sidewalk so that he could speak to Paez about what had occurred. Paez reported that she would feel safe if they took Singh away from the location. An officer took Paez to the hospital where she later reported Singh had hit her with a glass beer bottle.

During the investigation, witnesses, Wilson and Brown, indicated that Singh had struck Paez. One of the witnesses indicated that he saw Singh strike another female, Weasel Bear, around the same time that he believes Singh struck Paez.

Later that morning, officers went to speak with Weasel Bear, who had left Paez's home before police arrived. Upon contacting her, an officer noticed what appeared to be a recent injury to her face. Her bottom lip appeared to be swollen and bleeding.

___

[2] We refer to the witnesses by their last names only unless necessary for disposition of the issue.

3

Additionally, it appeared "she had just received a black eye or [was] starting to bruise."

Rep. of Proc. (RP) at 214. Weasel Bear denied being struck by Singh and was reluctant

to speak with the officers.

Singh was arrested and subsequently charged with second degree assault of Paez

under the substantial bodily harm and deadly weapon alternative prongs and harassment

for threatening harm to Paez's child.

After charges were filed, Paez told prosecutors that she was moving out of the

state and would not return for trial.

*Motions in Limine*

During motions in limine, the State sought to introduce evidence that Singh had

struck Weasel Bear in the face as res gestae evidence. Singh argued that evidence of the

assault on Weasel Bear was being introduced as propensity evidence or character

evidence.

After hearing argument by both parties, the court granted the State's motion:

> When we look at 404(b), it talks about other crimes, wrongs, or acts. They don't necessarily need to be prior. But it's used to prevent the State from trying to show someone acted in conformity with those events. It can be used for other reasons though.
>
> And we get into this discussion about the 404(b) versus the res gestae. In reviewing what the State provided, assuming that is the evidence that's going to be admitted, there seems to be a connection between Ms. Weasel Bear being struck and the alleged victim [Paez] being struck, according to Mr. Wilson. It all relates to one another.

4

There's also going to be testimony that other people were there. It would be hard for the State to present a case about why someone might not be present at trial or what might have occurred without being able to paint the full picture. But because of the way Mr. Wilson described what happened, it does appear that even though it might be a concurrent alleged prior bad act, it is necessary for the res gestae.

So for that reason, the Court will allow that to be admitted. The problem is there's going to be hearsay and other things that will probably still be excluded. So I'm not sure, at this time, without hearing any argument, that anything that Ms. Weasel Bear might have said, that there is any exception to that coming in. But because there is a firsthand witness that would testify that [the] assault occurred [against Weasel Bear] and that was the reason for the alleged assault on Ms. Paez, then it will be allowed. We'll have to talk more about how that comes in later. It would seem mainly through Mr. Wilson.

RP at 13-14.

*Trial*

Paez's friend, Brown, testified at trial. She stated that when she could not reach Paez, she called her son, Wilson, who was staying at Paez's residence. During their Facetime call, Brown asked Wilson what was going on. Brown could hear "banging, screaming, crying," and Wilson told her there was an altercation. During the call, Wilson was in the upstairs bathroom. Brown asked what was oing on and Wilson put the camera up to the window so she could see what was going on. Brown saw that Paez was "being punched in the face." RP at 351. She recalled seeing two additional people, a male and a female, "while [Paez] was on the ground." RP at 351. After this call, Brown immediately hung up and called the police.

5

Portions of an officer's body camera video were played at trial. The video shows Brown's son, Wilson telling officers that he woke up to Paez screaming "get off of me, quit touching me, get off of me!" Ex. 14, at 4 hrs., 42 min., 32 sec. Wilson came down stairs and saw Singh and Paez arguing. After Wilson went back upstairs, he heard Paez yell, "don't fucking hit me!" and then heard sounds like someone was walking around downstairs punching walls. Ex. 14, at 4 hrs., 44 min., 26 sec. through 4 hrs., 44 min., 49 sec. At that point, Paez was crying and screaming. Ex. 14, at 4 hrs., 44 min., 48 sec. He heard Paez repeatedly tell Singh to leave. Ex. 14, at 53 sec. After Singh and Paez left the house, Wilson heard Singh tell Paez that he was going to "beat the shit out of" Paez's youngest child so that he could sleep in Paez's bed. Ex 14, at 4 hrs., 45 sec., 58 sec. Paez responded by screaming, "how dare you threaten my child[ ]." RP (Apr. 3, 2023) at 299.

At trial, Wilson testified that as he spoke to his mother on the phone, he watched Singh, Paez, and Weasel Bear from an upstairs bathroom window. Wilson saw Singh "bust [Weasel Bear] in the mouth, as in physically punch her in the mouth." RP at 302. When asked what he heard, Wilson stated:

A I heard almost like a—like a ping, as if you were to bounce a glass
   bottle off of a wall or something to that nature, and then as if the bottle
   dropped on concrete.

Q Okay. Did you hear—when you heard that sound that you believe to be
   a glass bottle, did you hear anything from your aunt?

6

A Screaming. Like screaming loud, in pain, almost—I don't want to say
bloody murder because I think that's exaggerating it, but she was
definitely screaming in pain.

RP at 306. Wilson also testified that after Singh hit Weasel Bear, he saw Paez lying on

the ground. However, Wilson did not actually see Singh strike Paez.

One of the officers on scene, testified at trial. He observed a Corona box and

bottles throughout Paez's home. He testified to the characteristics and commonness of

such bottles. He explained that the bottles can take quite a bit of force to break and that

the glass shards are sharp and could cut someone. The State also admitted several

exhibits from the night in question, showing a fresh laceration to Paez's head and dried

blood.

After the State rested, defense counsel moved to dismiss one prong of the second

degree assault charge as well as the harassment charge. These motions were denied.

The court then instructed the jury. The jury was instructed the alternative means

charged for second degree assault, that the defendant "a. intentionally assaulted [Ms.

Paez] and thereby recklessly inflicted substantial bodily harm; or b. assaulted [Ms. Paez]

with a deadly weapon." Clerk's Papers (CP) at 34. Additionally, the court instructed that

if the jury finds "either alternative element (1)(a) or (1)(b) have been proved beyond a

reasonable doubt, then it will be your duty to return a verdict of guilty. To return a

verdict of guilty, the jury need not be unanimous as to which alternatives (1)(a) or (1)(b)

has been proved beyond a reasonable doubt." CP at 34.

7

The jury returned a guilty verdict for second degree assault and harassment. However, the special verdict form was left blank as to whether Singh assaulted Paez with a deadly weapon. The jury was instructed that to answer yes on the special verdict form the jury must be unanimously satisfied beyond a reasonable doubt that yes was the correct answer. Likewise, the jury was instructed to answer no if it unanimously agreed the answer to the question was no.

Singh was sentenced to the high end of the standard range, with 18 months of community custody to follow, including a condition that he refrain from using controlled substances including marijuana without a valid prescription. Additionally, the court imposed the $500 victim penalty assessment.

Singh appeals.

## ANALYSIS

1. SUFFICIENT EVIDENCE OF ALTERNATIVE MEANS

Singh contends his right to a unanimous jury verdict was violated because substantial evidence did not support one of the alternative means of committing assault under RCW 9A.36.021 and the jury was not instructed that it must be unanimous on which means supported the verdict.

In Washington, criminal defendants "have a right to a unanimous jury verdict." *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994); *see also* WASH. CONST. art. I, § 21. In certain situations, the right to a unanimous verdict also includes

the right to "express jury unanimity on the *means* by which the defendant is found to have committed the crime." *Id*. "[I]n alternative means cases, [if] substantial evidence supports both alternative means submitted to the jury, unanimity as to the means is not required." *State v. Armstrong*, 188 Wn.2d 333, 340, 394 P.3d 373 (2017). On the other hand, if the State does not present sufficient evidence for each alternative means of committing the crime, then "a particularized expression of jury unanimity is required." *State v. Owens*, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014).

A. *Second Degree Assault*

"An alternative means crime is one where . . . the State may prove the proscribed criminal conduct in a variety of ways." *Armstrong*, 188 Wn.2d at 340. Here, Singh was charged with second degree assault, which is an alternative means crime because the statute provides seven alternative methods with which to charge the crime. *See* RCW 9A.36.021(1)(a)-(g). Relevant to this appeal are the following two alternative means charged by the State:

(1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:

(a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm; or

. . . .

(c) Assaults another with a deadly weapon.

RCW 9A.36.021.

9

Because there was not a particularized expression of jury unanimity, there must be sufficient evidence to support each of the alternative means of second degree assault. Evidence will be considered "sufficient if 'after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt.'" *Ortega-Martinez*, 124 Wn.2d at 708 (quoting *State v. Rempel*, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990)).

Here, Singh challenges the sufficiency of evidence to support one of the two alternative means: that he assaulted Paez with a deadly weapon. Under RCW 9A.04.110(6), a "[d]eadly weapon" can either be a deadly weapon per se or, as relevant here, "any other weapon, device, instrument, article, or substance, including a 'vehicle'. . . which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." Singh argues that there was no evidence of the type of bottle he used and the manner in which he used the bottle, and thus there is no evidence that the bottle was readily capable of causing death or substantial bodily harm. We disagree.

There was sufficient evidence that Singh used a beer bottle to strike Paez in the head with enough force to cause a deep gash in her head. Wilson testified at trial that from the upstairs bathroom window he could see the front yard. RP at 300-01. He explained that Singh and Paez were out of sight, but he heard a "ping," as if "you were to bounce a glass bottle off of a wall or something to that nature," and then heard the bottle

10

dropping on concrete. RP at 306. After he heard the ping of a bottle, he heard his aunt screaming in pain. When police arrived, Paez was bleeding from a gash on her head and was transported to the hospital to receive medical services.

There was also sufficient evidence that the beer bottle was used as a deadly weapon under the circumstances. To evaluate the "circumstances" in which an object is used, courts look to "'the intent and present ability of the user, the degree of force, the part of the body to which it was applied and the physical injuries inflicted.'" *State v. Shilling*, 77 Wn. App. 166, 171, 889 P.2d 948 (1995) (quoting *State v. Sorenson*, 6 Wn. App. 269, 273, 492 P.2d 233 (1972)). Additionally, "ready capability" is determined in relation to "surrounding circumstances, with reference to potential substantial bodily harm." *Id.* Although we are unaware of the degree of force, there is circumstantial evidence that Singh hit Paez with the bottle hard enough to cause a "ping" noise and cause physical injuries. This is evident from Wilson's testimony regarding the noise as well as the exhibits showing a laceration on Paez's head along with dried blood. Based on the circumstances, there was sufficient evidence that a beer bottle was used as a deadly weapon.

Singh argues that nothing demonstrates the instrument had an inherent capacity to cause substantial bodily injury. Singh fails to recognize we first look to the circumstances in which the object was used and then determine whether based on those circumstances, the object is "readily capable" of causing substantial bodily harm. A

11

bottle made of glass is readily capable of causing substantial bodily harm when used to hit someone over the head. *See, e.g.*, *Shilling*, 77 Wn. App. 172 (determining that a blow from a bar glass to the head was readily capable of causing substantial bodily harm).

Singh also argues there was no evidence of the type of bottle Singh used or its durability. However, Wilson testified that Singh was drinking all night and had observed him drinking Corona. Additionally, exhibit 16 depicts what appears to be a glass Corona bottle sitting on a table in the residence. Likewise, Officer Ballard provided testimony at trial that in reviewing the exhibits presented, there was a Corona box and he was able to identify a Corona bottle located in a photo. Finally, he testified these types of bottles are not fragile and "take a bit of force" to break. RP at 241. Therefore, contrary to Singh's assertion, there was evidence of the type of bottle used and its durability.

Singh cites *State v. Skenandore*, 99 Wn. App. 494, 994 P.2d 291 (2000) as instructive. However, in that case, an inmate created a homemade spear "fashioned from writing paper rolled into a rigid shaft bound with dental floss, affixed to a golf pencil." *Id.* at 496. The court noted there was no testimony regarding the spear's potential for substantial bodily harm, the jury was not able to examine the spear, and the injuries were "well below [the victim's] head," which did not break the skin. *Skenandore*, 99 Wn. App. at 500. Whereas here, there was testimony regarding the durability of a glass bottle as well as exhibits demonstrating both the type of bottle used as well as the injuries to the head that resulted. In addition, while the capabilities of a homemade spear made from

paper and pencils might not be readily apparent, a jury can use common sense when evaluating the physical characteristics of a beer bottle.

Finally, Singh cites *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 256 P.3d 277 (2011), which is also factually distinguishable. There, the court evaluated whether the State presented sufficient evidence to prove attempted use of a knife (i.e., deadly weapon) when nobody saw the defendant with the knife, it was located about 15 feet from the altercation with law enforcement, and the only evidence was the unfastened sheath. *Id*. at 369. Singh confuses this case with the requirement that there needed to be evidence of Singh's intent to use the bottle. However, *Martinez* involved a determination of "attempt" under the definition of deadly weapon rather than "which it is used" under the statute as in Singh's case.

The direct and circumstantial evidence in this case, along with reasonable inference therefrom, when viewed in a light most favorable to the State, provide sufficient evidence to support a finding that Singh used a deadly weapon to assault Paez. Sufficient evidence supports both prongs of second degree assault. Thus, jury unanimity was not required.

2.   EVIDENCE OF "OTHER" ASSAULT ADMITTED AS RES GESTAE

Singh contends the trial court committed reversible error by admitting highly prejudicial evidence of Singh's uncharged assault against Weasel Bear as res gestae evidence. He argues that res gestae is not an independent basis to admit evidence of

uncharged misconduct and this court should abandon the rule. Alternatively, he claims

the prior assault is still inadmissible evidence even under res gestae. Finally, he contends

the evidence was not harmless. We are bound by the Supreme Court's recognition of res

gestae and decline Singh's invitation to abolish the doctrine. Moreover, we conclude that

the trial court did not abuse its discretion by admitting evidence under this theory of

relevance.

### A. Standard of Review

Trial courts have considerable discretion in their evidentiary rulings, and we

review such decisions under a deferential abuse of discretion standard. *State v. Quaale*,

182 Wn.2d 191, 196, 340 P.3d 213 (2014). "A trial court abuses its discretion when a

decision is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable

reasons.'" *State v. Howland*, 180 Wn. App. 196, 204, 321 P.3d 303 (2014) (internal

quotation marks omitted) (quoting *Mayer v. Sto Indus., Inc.,* 156 Wn.2d 677, 684, 132

P.3d 115 (2006)). "A decision is based on untenable grounds if the court relies on an

incorrect legal standard or does not correctly apply the law." *State v. Hill*, 6 Wn. App. 2d

629, 640, 431 P.3d 1044 (2018).

While Singh acknowledges this general rule, he contends that when a trial court

fails to conduct a proper ER 404(b) analysis before admitting evidence of prior

misconduct, our review is de novo, citing *State v. Riley*, 12 Wn. App. 2d 714, 721, 460

P.3d 184 (2020). As will be explained below, while both res gestae and ER 404(b)

14

concern evidence of misconduct, they are not the same rule, and res gestae evidence "is not subject to the requirements of ER 404(b)." *State v. Sullivan*, 18 Wn. App. 2d 225, 237, 491 P.3d 176 (2021).

### B. Res Gestae Evidence

The recently published decision in *Sullivan* provides a thorough analysis of res gestae and how this theory of admissibility is separate and distinct from evidence of prior bad acts under ER 404(b). *Id*. at 225. According to *Sullivan*, res gestae is "evidence that completes the story of the crime charged or provides immediate context for events close in both time and place to that crime," whereas ER 404(b) prohibits "other" or "prior" misconduct to show propensity. *Id*. at 237, 236. Under the theory of res gestae, "'[a] defendant cannot insulate himself by committing a string of connected offenses and then argue that the evidence of the other uncharged crimes is inadmissible because it shows the defendant's bad character, thus forcing the State to present a fragmented version of the events.'" *Id*. at 235 (alteration in original) (quoting *State v. Lillard*, 122 Wn. App. 422, 431, 93 P.3d 969 (2004)).

Res gestae evidence is reviewed as relevant under ER 401, ER 402, and ER 403. Here, the trial court did not abuse its discretion in admitting evidence of the prior assault against Weasel Bear as res gestae evidence of the offense. The assault on Weasel Bear occurred in the same location and seconds before the assault on Paez. The evidence was relevant for the jury to understand the events that took place during this incident. Brown

15

testified that Singh was romantically involved with Paez and Weasel Bear at the same time. RP at 345. Cooper testified that Weasel Bear and Singh were at Paez's home that night and he heard Paez yelling at everybody and make statements such as not wanting anybody to touch her. Later, from the upstairs bathroom window, Wilson saw Weasel Bear, Singh, and Paez outside. Wilson heard what sounded like the ping of a beer bottle and then heard Paez screaming in pain. When law enforcement arrived Weasel Bear was not there.

Allowing the jury to hear about all the events that transpired that night provides a complete picture. The evidence helped explain the circumstances of the incident; it was not propensity evidence. It demonstrated that on this night Singh was acting violently. Additionally, Singh's assault against Weasel Bear tends to show that it was Singh and not Weasel Bear that assaulted Paez. It also has relevance as to why Weasel Bear left and was not testifying.

Singh contends that in admitting the evidence, the trial court neglected to balance the probative value of the evidence against the prejudicial effect under ER 403. Had the State moved to admit the evidence under ER 404(b), the trial court would have been required to partake in a four-step analysis, culminating in a balancing test that weighs the probative value of the evidence against its prejudicial effect. *Riley*, 12 Wn. App. 2d at 720. But res gestae evidence is not subject to the requirements of ER 404(b). *Sullivan*, 18 Wn. App. at 236. As such, the trial court was not required to conduct a 4-step inquiry

16

on the record as it would if the evidence was introduced under ER 404(b).  Instead, if

Singh felt the probative value was outweighed by its prejudicial effect, his remedy was to

raise this objection and ask the court to conduct this balancing test on the record.  *See*

*Carson v. Fine*, 123 Wn.2d 206, 225, 867 P.2d 610 (1994) (noting "that under ER 403,

the burden of showing prejudice is on the party seeking to exclude the evidence"); *State*

*v. Sullivan*, 69 Wn. App. 167, 847 P.2d 953 (1993) ("'[A] litigant cannot remain silent as

to claimed error during trial and later, for the first time, urge objections thereto on

appeal.'") (quoting *State v. Guloy*, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985)).

Additionally, Singh asks this court to abolish res gestae, citing non-binding

authority that suggests the theory is often misused, and arguing that the adoption of ER

404(b) superseded the judicially created theory of res gestae.  "In general, we are bound

to follow Washington Supreme Court precedent."  *State v. Calloway*, 31 Wn. App. 2d

405, 415, 550 P.3d 77 (2024).  Our Supreme Court has expressly recognized res gestae

evidence as an exception to ER 404(b).  *See State v. Lane*, 125 Wn.2d 825, 834, 889 P.2d

929 (1995).  This court thus "remains bound by [the] decision of the Washington

Supreme Court."  *State v. Jussila*, 197 Wn. App. 908, 931, 392 P.3d 1108 (2017).

The trial court did not abuse its discretion in admitting evidence that Singh

assaulted Weasel Bear moments before he assaulted Paez.  The evidence was relevant to

provide context and show motive.  The two acts were intertwined.

3.   SUFFICIENCY OF EVIDENCE SUPPORTING HARASSMENT CONVICTION

Singh was convicted of misdemeanor harassment for telling Paez that he would hurt Paez's sleeping daughter. On appeal, he raises two challenges to the harassment conviction. First, he argues that the evidence is insufficient. Second, he contends that the jury instructions were deficient. Because the remedy for insufficient evidence is reversal and dismissal with prejudice, we consider this argument first. *See State v. Hickman*, 135 Wn.2d 97, 103, 954 P.2d 900 (1998).

*A. Sufficiency of Evidence for Harassment*

Singh contends his conviction for harassment must be reversed and dismissed because the evidence was insufficient to support two essential elements. Specifically, he contends the State failed to prove that his statement (1) placed Paez in subjective fear, and (2) constituted a true threat.

In a criminal case, "[t]he State has the burden of proving the elements of a crime beyond a reasonable doubt." *State v. Clark*, 190 Wn. App. 736, 755, 361 P.3d 168 (2015). When a defendant challenges sufficiency of the evidence for a given offense, this court views "the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* A challenge to the sufficiency of the evidence "admits the truth of the State's evidence." *Id.* When considering a challenge to the sufficiency of the

18

evidence, we give equal weight to direct and circumstantial evidence. *State v. Goodman*,

150 Wn.2d 774, 781, 83 P.3d 410 (2004).

In addition to the generally applicable sufficiency principles, because of the

constitutional implications inherent in our review, "we conduct a limited independent

review of [the] facts crucial to the true threat inquiry." *State v. Kohonen*, 192 Wn. App.

567, 577, 370 P.3d 16 (2016).

> [T]he First Amendment demands more than application of our usual
> standard of review for sufficiency of the evidence.  Instead, we must
> independently examine the whole record to ensure that the judgment does
> not constitute a forbidden intrusion into the field of free expression.

*State v. Locke*, 175 Wn. App. 779, 790, 307 P.3d 771 (2013) (internal citation omitted).

With these principles in mind, we turn to whether Singh's statement placed Paez

in fear and whether the statement constituted a true threat.

> i.  *Whether the evidence was sufficient to prove Paez was placed in fear*
>     *because of Singh's statement*

Singh argues the evidence was insufficient to demonstrate Paez was placed in fear

because of his statement.

RCW 9A.46.020 provides:

(1) A person is guilty of harassment if:

    (a) Without lawful authority, the person knowingly threatens:

    (i) To cause bodily injury immediately or in the future to the person
threatened or to any other person; or

19

. . . .

(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out.

To prove harassment, the State must show that the victim subjectively felt fear and that this fear was objectively reasonable. *State v. E.J.Y.*, 113 Wn. App. 940, 953, 55 P.3d 673 (2002). Pointing out that Paez did not testify, Singh argues that there was no evidence that Paez subjectively felt fear based on Singh's statement.[3] We disagree.

The State produced circumstantial evidence that Paez was placed in fear as a result of Singh's statement. In a body camera video played to the jury, Wilson told officers that he woke up to Paez's screams saying "get off of me, quit touching me, get off of me!" Ex. 14, at 4 hrs., 42 min., 32 sec. Wilson came down stairs and saw Singh and Paez. After Wilson went back upstairs, he heard Paez yell, "don't fucking hit me!" and then heard sounds like someone was walking around downstairs punching walls. Ex. 14, at 4 hrs., 44 min., 26 sec. through 4 hrs., 44 min., 49 sec. At that point, Paez was crying and screaming. When Paez and Singh went outside, she told him repeatedly to leave, and Singh refused. Wilson then heard Singh threaten to "beat the shit out of" Paez's youngest child so he could sleep in Paez's bed. Ex 14, at 4 hrs., 45 min., 58 sec.

---

[3] Singh does not challenge the sufficiency of evidence that any fear was reasonable.

Similarly, at trial Wilson testified that he heard arguing and heard Paez scream "get off of me," and "don't hit me." RP at 291. Wilson then heard Singh indicate that he wanted to go upstairs and go to sleep. When Paez told him he could not do this because her young daughter was in the bed, Singh told Paez, "he will beat the shit out of that child" so he can go to bed. RP at 294. In response, Paez screamed, "how dare you threaten my children." RP at 299.

To support his argument that Singh's threat to hurt Paez's child did not place Paez in fear, Singh argues that there was "no evidence the parties became physically animated" or "approached one another during or immediately after the exchange." Br. of Appellant at 53. This argument fails for two reasons. First, nothing in the statute requires a physical altercation before a person can feel fear. Second, there is sufficient circumstantial evidence that Singh was getting physical with Paez before and immediately after he threatened to hurt her child.

Although Paez did not testify and most of the evidence was circumstantial, subjective fear may still be proved through this type of evidence and carries equal weight. *See Inre Pers. Restraint of Blaylock*, 30 Wn. App. 2d 569, 546 P.3d 86 (2024).

> ii. *Whether the evidence was sufficient to prove Singh's statement constituted a true threat*

Next, Singh argues the evidence was insufficient to demonstrate that he made a true threat. He contends that there is no evidence of his reckless mens rea.

Aside from the elements proscribed in the harassment statute, the Washington Supreme Court has imposed a constitutional limitation, explaining that the underlying statement must also constitute a true threat. *Kilburn*, 151 Wn.2d at 48. A true threat is considered "a serious threat, not one said in jest, idle talk, or political argument." *Id*. "[T]he nature of a threat depends on all the facts and circumstances." *State v. C.G.*, 150 Wn.2d 604, 611, 80 P.3d 594 (2003).

At the time of Singh's trial, a "true threat" was defined through an objective lens to include "a statement made 'in a context or under such circumstances wherein *a reasonable person* would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of [another individual].'" *State v. Knowles*, 91 Wn. App. 367, 373,957 P.2d 797 (1998) (emphasis added) (alterations in original) (quoting *United States v. Khorrami*, 895 F.2d 1186, 1192 (7th Cir. 1990)). The mens rea for true threats was labeled as "simple negligence." *State v. Calloway*, 31 Wn. App. 2d 405, 418, 550 P.3d 77 (2024).

Following Singh's trial, the United State Supreme Court issued its opinion in *Counterman*, which recognized a new mens rea requirement for true threats. The Court held that the First Amendment requires that the defendant accused of a crime involving a true threat must have some subjective knowledge of the threatening nature of the statement. *Counterman*, 600 U.S. at 69. Specifically, the mental state of recklessness is required. *Id*. Under this standard, in order to show a true threat, the State must prove that

22

"the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Id*.

The State concedes that *Counterman* changes the elements of Washington's harassment offense as it applies to Singh's case.[4] *See Calloway*, 31 Wn. App. 2d at 415-16 ("In a matter of federal constitutional law, a clear directive from the United States Supreme Court controls where the Washington Supreme Court has not yet addressed that recent directive's effect."). Nevertheless, the State contends that it presented sufficient evidence for a jury to find that the recklessness standard articulated in *Counterman* was met.

As an initial matter, very rarely do courts have direct evidence of a defendant's intent. Instead, it "is typically proved through circumstantial evidence." *See State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013) "'[I]ntent to commit a crime may be inferred if the defendant's conduct and surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability.'" *Id.* (quoting *State v. Woods*, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991)). Additionally, whether the evidence is

---

[4] "United States Supreme Court decisions that announce new constitutional rules governing criminal prosecutions [generally] apply retroactively to all criminal cases not yet final on appeal." *State v. Harris*, 154 Wn. App. 87, 92, 224 P.3d 830 (2010). Although Singh fails to properly analyze whether the law of *Counterman* applies to his case, the State concedes that it does.

23

direct or circumstantial is not determinative, because both carry equal weight. *See State v. Sprague*, 16 Wn. App. 2d 213, 233, 480 P.3d 471 (2021) ("Circumstantial evidence is not any less reliable or probative than direct evidence."). "'However, inferences based on circumstantial evidence must [still] be reasonable and . . . not based on speculation.'" *Sprague*, 16 Wn. App. 2d at 233 (quoting *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013)).

Here, the evidence was sufficient to determine Singh's statement constituted a true threat under the new *Counterman* standard. Wilson heard Paez say "get off of me" and "don't hit me," along with banging sounds like something hitting the walls. RP at 291. Shortly thereafter, Singh told Paez that he would "beat the shit out of that child" so he can go to bed. RP at 294. When viewed in a light most favorable to the State, the evidence was sufficient for a jury to find that Singh consciously disregarded a substantial risk that Paez would consider his statement as a true threat to hurt her child.

4.    JURY INSTRUCTIONS ON HARASSMENT

Singh contends the trial court erred by neglecting to instruct the jury that, to commit harassment, Singh must have been reckless as to the threatening nature of his statement. While conceding error, the State contends even with the omitted *Counterman*-compliant jury instruction, the error was harmless beyond a reasonable doubt. We conclude that the State does not meet its burden of showing constitutional harmless error.

As discussed above, the Supreme Court decision in *Counterman* changed the definition of a true threat. The new standard applies to Singh's case and required the State to prove that Singh's mens rea amounted to recklessness. 600 U.S. at 79. The State concedes that the to-convict jury instructions on harassment in this case did not include the necessary element of recklessness.

"The omission of the constitutionally required mens rea from the jury instructions in the true threat context is analogous to the omission of an element of the crime from the instructions." *Calloway*, 550 P.3d at 88. As such, the "omission is . . . subject to constitutional harmless error review." *Id*. "Prejudice is presumed, and the State must prove that the error was harmless beyond a reasonable doubt." *Id*. An error will be considered harmless beyond a reasonable doubt if this court "'is assured . . . the jury would have reached the same verdict without the error.'" *Id.* (quoting *State v. Romero-Ochoa*, 193 Wn.2d 341, 347, 440 P.3d 994 (2019)).

At trial, the jury was instructed that to constitute a "threat," "a statement or act must occur in a context or under such circumstances where *a reasonable person*, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk." CP at 44 (emphasis added). Although this instruction may have been correct under the existing law, after *Counterman* the instruction was erroneous. The instruction failed to instruct the jury of the now required subjective recklessness standard.

25

Given that prejudice is presumed, the State has a high burden to prove that the omission from the jury instructions was harmless beyond a reasonable doubt. Based on the record, we are not persuaded that the omission did not contribute to the jury verdict. The evidence of Singh's subjective state of mind was circumstantial. As Singh notes, at the very least, this demonstrates an ambiguity as to whether the jury would have convicted Singh despite thinking he was not reckless about the threatening nature of his statement. However, an "error is not harmless when the evidence and instructions leave it ambiguous as to whether the jury could have convicted on improper grounds." *Schaler*, 169 Wn.2d at 288. Therefore, the error was not harmless beyond a reasonable doubt.

The State contends that the same facts and circumstances that the jury found beyond a reasonable doubt are those that, had they been instructed on, would have proved the new subjective element. However, it is unclear based on the record whether the State or Singh would have submitted additional or different evidence to prove the subjective component. And, for this reason, it cannot be said the jury would have reached the same verdict without the error.

5. STATEMENT OF ADDITIONAL GROUNDS (SAG)

Singh presents two issues in his SAG to this court. First, he argues that the State failed to prove beyond a reasonable doubt the essential elements "intentionally" and "recklessly" to sustain the conviction of second degree assault under RCW 9A.36.021(1)(a). Second, Singh requests remand to strike a condition imposed by the

26

sentencing court that Singh cannot use or possess marijuana without a valid prescription. In doing so, he claims the sentencing court exceeded its statutory authority. We address the first issue. Singh can raise the second issue on remand.

As discussed above, one of the alternative means of committing second degree assault Singh was charged with was RCW 9A.36.021(1)(a), that Singh "[i]ntentionally assault[ed] another and thereby recklessly inflict[ed] substantial bodily harm."

The evidence was sufficient to prove Singh intentionally assaulted Paez, thereby recklessly inflicting substantial bodily harm. Singh's argument largely relies on the contention that nobody saw Singh as the assailant or with the beer bottle. This issue is largely disposed of above. Singh also contends the jury was left to infer that Singh disregarded a substantial risk. However, determining whether the mens rea for a given offense has been met is precisely the roll of the jury. *See, e.g.*, CP at 34-36. And, it logically follows that a jury may determine a defendant recklessly inflicted substantial bodily harm after intentionally striking the victim over the head with a beer bottle even if this rests on circumstantial evidence.

Furthermore, Singh contends the State did not elect to argue Brown's account of the events. Although Brown's testimony may have differed from Wilson's, the jury was the sole judge when determining credibility and this court will not reweigh that credibility on appeal. *See State v. Living Essentials, LLC*, 8 Wn. App. 2d 1, 15, 436 P.3d

857 (2019) ("Reviewing courts will not reweigh the evidence or the credibility of witnesses on appeal."). As such, Singh's arguments fail.

The evidence was sufficient to prove that Singh intentionally assaulted Paez and thereby recklessly inflicted substantial bodily harm.

6.   CONCLUSION

We affirm Singh's conviction for second degree assault, finding that jury unanimity on the alternative means was not required because the evidence was sufficient to support both means. Similarly, we conclude the evidence was sufficient for a jury to find Singh guilty of misdemeanor harassment even under the new *Counterman* standard. However, we hold that the failure to include a reckless mens rea in the to-convict jury instruction on the harassment charge was error requiring reversal of this conviction. Since we remand for a new trial or resentencing, we do not address Singh's sentencing issue.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

I CONCUR:

_____
Pennell, J.

28

NO. 39703-3-III

FEARING, J. (concurring) — I agree with Anthony Singh's criticism of res gestae and encourage the abolition of the rule. I agree with the majority opinion, however, that this court lacks authority to eliminate the rule from Washington jurisprudence. *State v. Gore*, 101 Wn.2d 481, 486-87, 681 P.2d 227 (1984).

If I sat as the superior court judge during Anthony Singh's trial, I might have excised under ER 403, from the jury's hearing, the assault on Weasel Bear. Admission of this abundantly prejudicial evidence illustrates in part the danger of the res gestae rule. Nevertheless, the trial court receives and deserves considerable discretion in administering ER 403. *Carson v. Fine*, 123 Wn.2d 206, 226, 867 P.2d 610 (1994). The superior court did not abuse its discretion when allowing the State to present this evidence.

_____
Fearing, J.